PEOPLE v MOORE

1. CRIMINAL LAW—RECORD—FINDINGS—MOTIONS—ATTORNEY AND CLIENT.

Michigan Supreme Court does not have a record or 'findings by a trial judge to review where defendant failed to file the requisite motion to make a testimonial record at the trial court level which evidentially supports his claim of ineffective assistance of counsel and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately.

2. CRIMINAL LAW—DRUGS AND NARCOTICS—EVIDENCE—HEROIN— SEARCH AND SEIZURE—MOTION TO SUPPRESS—APPEAL AND ERROR.

A defendant could not have been convicted of unlawful possession of a narcotic drug unless there had been admitted in evidence the heroin seized as an incident to his arrest; therefore, if it appears from trial record that had a motion to suppress been made it should have been granted, an appellate court may properly grant relief even though the issue was raised for the first time on appeal.

3. SEARCHES AND SEIZURES—ARREST—CURSORY EXAMINATION—REASONABLENESS—DRUGS AND NARCOTICS—HEROIN—RECORD—EVIDENCE—MOTION TO SUPPRESS.

There is no reason on the record to question the reasonableness of the arresting officer's belief upon his cursory examination of a vial which fell from the defendant's hand when he was arrested for another crime and made immediately upon taking defendant to the police station that the white powder contained in the aberrant transparent capsules in the curiously unmarked, transparent vial was heroin where the defendant did not move to suppress.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 316, 317.

[2, 7] 29 Am Jur 2d, Evidence §§ 410–418.

[3, 4] 68 Am Jur 2d, Searches and Seizures §§ 2, 62.

[5, 6, 8–13] 21 Am Jur 2d, Criminal Law § 585.

4. SEARCHES AND SEIZURES—OUTSIDE OF CURTILAGE—REASONABLENESS
—CONSTITUTIONAL LAW—CONSTRUCTION—EVIDENCE.

The proviso in a section of an article of the Michigan Constitution protecting against "unreasonable searches and seizures" which prohibits the exclusion from evidence of "any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house", precludes a construction of the Michigan search and seizure clause imposing a higher standard of reasonableness for searches and seizures of items named in the proviso than the United States Supreme Court has held applicable under the Fourth Amendment (US Const, Am IV; Const 1963, art 1, § 11).

5. CRIMINAL LAW—PRIOR CONVICTIONS—IMPEACHMENT—DISCRETION—
FAILURE TO PRESERVE ISSUE.

A defendant whose attorney did not invoke the judge's discretion to exclude reference to his prior conviction record cannot fault the judge for failing to exercise discretion when he allowed impeachment on the basis of prior convictions; refusing to consider this unpreserved issue on its merits is proper because the impeachment of defendant by reference to his past convictions was not necessarily decisive.

6. CRIMINAL LAW—DISCRETION—PRIOR CONVICTIONS.

A trial judge is only required to exercise his discretion before deciding whether to permit reference to the defendant's conviction record; he is not required to exclude reference to the defendant's conviction record.

7. SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY.

A judge presented with a meritorious search and seizure claim is obliged to exclude the impermissibly obtained evidence.

8. CRIMINAL LAW—SENTENCES—PRIOR CONVICTIONS—ATTORNEY AND
CLIENT—CONSTITUTIONAL LAW—RETROACTIVE APPLICATION.

The United States Supreme Court decision is applicable with full retroactivity to all sentences imposed by Michigan courts, which held that a case must be remanded to trial court for resentencing without consideration of any prior convictions which were invalid where two of the defendant's previous state felony convictions were constitutionally infirm since he had been unrepresented by counsel, and he had been neither advised of his right to legal assistance nor had he intelligently and understandingly waived his right to the assistance of counsel because the sentence might have been different if the sentencing judge had known that at least two of the respon-

dent's previous convictions had been unconstitutionally obtained.

9. CRIMINAL LAW—PRIOR CONVICTIONS—IMPEACHMENT—DUE PROCESS
—RETROACTIVE APPLICATION.

The United States Supreme Court decision holding that the use of
prior, void convictions for impeachment purposes deprives a
criminal defendant of due process of law where their use might
well have influenced the outcome of the case and applying its
principle with full retroactivity is directly applicable to state
court proceedings and is retroactive.

10. CRIMINAL LAW—IMPEACHMENT—DRUGS AND NARCOTICS—PRIOR
CONVICTIONS—BREAKING AND ENTERING—DUE PROCESS.

The impeachment of a defendant in a trial for unlawful posses-
sion of a narcotic drug on the basis of an invalid conviction for
breaking and entering in the nighttime did not influence the
outcome of the case and thus deprive him of due process of law
because once he was impeached on the basis of his apparently
valid prior conviction for possession of narcotics, the credibility
of his defense that the vial, containing capsules of heroin which
fell from his hand when he was arrested for another crime, was
not his was so undermined that his credibility could not have
been further damaged by reference to his apparently void
conviction.

11. CRIMINAL LAW—SENTENCES—PRIOR CONVICTIONS—VALIDITY OF
PRIOR CONVICTIONS—ATTORNEY AND CLIENT—WAIVER—REVIEW
—COURT OF APPEALS.

Post-sentencing claims, in the future, that the sentence might
have been different if the sentencing judge had known that
defendant's previous convictions had been unconstitutionally
obtained because the defendant had been unrepresented by
counsel and that he had been neither advised of his right to
legal assistance nor had he intelligently and understandingly
waived his right to the assistance of counsel should be initially
decided by the sentencing judge or his successor; he is in the
best position to explore and decide the factual issues and, if
necessary, the defendant can then be resentenced; and the
Michigan Court of Appeals may refrain from considering the
claim until the sentencing court has had an opportunity to
resolve it.

12. CRIMINAL LAW—SENTENCES—PRIOR CONVICTIONS—VALIDITY OF
PRIOR CONVICTIONS—HEARING—ATTORNEY AND CLIENT—
WAIVER—EVIDENCE—BURDEN OF PROOF—DISTRICT AND PROSE-
CUTING ATTORNEYS.

A defendant, to invoke a hearing to determine if the sentence

might have been different if the sentencing judge had known that defendant's previous convictions had been unconstitutionally obtained because the defendant had been unrepresented by counsel and that he had been neither advised of his right to legal assistance nor had he intelligently and understandingly waived his right to the assistance of counsel, must (1) present .prima facie proof that a previous conviction was violative of *Gideon v Wainwright,* 372 US 335 (1963), such as a docket entry showing the absence of counsel or a transcript evidencing the same; or (2) present evidence that he has requested such records from the sentencing court and it has failed to reply or has refused to furnish copies of records within a reasonable period of time, four weeks; upon such presentation, either (1) or (2), the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction; thus, if the prosecutor contends that the defendant waived counsel, the burden will be on him to show affirmative record evidence of waiver, and if he obtains and furnishes the judge and the defendant or his lawyer with photocopies of records establishing the constitutional validity of the prior conviction, the judge may decide the matter on the papers presented unless the defendant, on notice, shows cause to hold a hearing at which he is present; unless the prosecutor furnishes such evidence within one month of the defendant's motion, the judge shall set the matter for an early hearing and order the production of the defendant at the hearing.

13. CRIMINAL LAW—SENTENCES—PRIOR CONVICTIONS—VALIDITY OF PRIOR CONVICTIONS—ATTORNEY AND CLIENT—COURTS.

A defendant who claims the sentence might have been different if the sentencing judge had known that defendant's previous convictions had been unconstitutionally obtained because the defendant had been unrepresented by counsel and that he had been neither advised of his right to legal assistance nor had he intelligently and understandingly waived his right to the assistance of counsel will not be required first to establish in separate post-conviction actions that the underlying convictions are invalid; a Michigan trial court is competent to resolve the factual issues regarding the constitutional validity of a defendant's previous Michigan convictions, and a Michigan court may also properly determine the validity of convictions in other state courts and the Federal courts for the limited purpose of reassessing the validity of a Michigan sentence.

Appeal from Court of Appeals, Division 1, Mc-Gregor, P. J., and Bronson and Targonski, JJ., affirming Genesee, Philip C. Elliott, J. Submitted January 11, 1974. (No. 3 January Term 1974, Docket No. 54,651.) Decided April 16, 1974.

Reuben Moore was convicted of unlawful possession of a narcotic drug. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Conviction affirmed and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Steven L. Schwartz),* for defendant on appeal.

LEVIN, J. Reuben Moore was convicted by a jury's verdict for unlawful possession of a narcotic drug and sentenced to serve a prison term of eight to ten years.[1] The Court of Appeals, in an unpublished per curiam opinion, affirmed, reducing the minimum term of Moore's sentence to six years and eight months on the authority of *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972).

The issues concern:

1) the validity of the warrantless seizure of the narcotic drug during a cursory examination incident to Moore's valid arrest for an unrelated crime;

2) the admissibility of Moore's prior convictions for the purpose of impeaching his credibility;

---

[1] MCLA 335.153; MSA 18.1123.

3) a claim that Moore was not represented by counsel at the times of the earlier convictions and, therefore, even if prior convictions are generally admissible, these prior convictions were not admissible and, similarly, they should not have been considered at the time of sentencing;

4) a claim that Moore was denied the effective assistance of counsel because his trial lawyer failed to preserve any of the foregoing objections.

## I

In *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), we recently held that, to the extent a claim of ineffective assistance of counsel depends on facts not of record, the defendant must make a testimonial record at the trial court level which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately. The requisite motion was not filed, and therefore, we do not have a record or findings by a trial judge to review.

However, Moore could not have been convicted unless there had been admitted in evidence the heroin seized as an incident to his arrest. Therefore, if it appears from the trial record that had a motion to suppress been made it should have been granted, an appellate court may properly grant relief even though the issue was raised for the first time on appeal.[2]

## II

Two Flint police officers, dressed in civilian

---

[2] *See People v Smith,* 260 Mich 486; 245 NW 502 (1932); *People v Steeneck,* 247 Mich 583; 226 NW 231 (1932); *People v Ibarra,* 60 Cal 2d 460; 34 Cal Rptr 863; 386 P2d 487 (1963); *People v Johnson,* 38 Ill 2d 399; 231 NE2d 447 (1967).

clothes, as part of the vice squad's operations to curtail street prostitution, were patrolling a "problem area" in an unmarked car. They observed several female and male subjects on the street and a female talking to a man in an automobile. Suspecting that she was attempting to solicit someone in that automobile, they pulled their automobile over to the curb. Almost immediately, Moore approached and inquired whether the officers would be interested in engaging the services of a prostitute. An officer stepped from the car and placed Moore under arrest "for soliciting for immoral purposes".

Moore placed his hand in his pants pocket. The officer, believing Moore might be reaching for a weapon, grabbed him and spun him against the side of an automobile. Moore then opened his right hand and a small plastic vial fell to the ground.

The vial was of clear plastic with a snap-on top of the kind commonly used by pharmacies to dispense medicine. The vial was unlabeled. Inside were 20 small capsules containing white powder. Eighteen capsules were of clear plastic and the other two were red. The capsules lacked the fresh, uniform appearance typical of capsules dispensed by a pharmacy. Immediately upon taking Moore to the police station,[3] the officer conducted a cursory examination of the vial, concluded that the capsules contained heroin, and then arrested Moore on a narcotics charge.[4]

In two recent cases decided by the United States Supreme Court, *United States v Robinson,* 414 US 218; 94 S Ct 467; 38 L Ed 2d 427 (1973), and

---

[3] *Cf. Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970); *People v Weaver,* 35 Mich App 504, 513; 192 NW2d 572 (1971).

[4] The officer knew Moore "from before"—"a number of years ago". Moore testified, "if he knew me from the past he would have known" that Moore had a prior narcotics record.

*Gustafson v Florida,* 414 US 260; 94 S Ct 488; 38 L
Ed 2d 456 (1973), the defendants were arrested for
traffic offenses, taken into custody, and searched
for weapons. In *Robinson,* during the search the
arresting officer uncovered a crumpled cigarette
pack. His cursory examination of the pack re-
vealed 14 gelatin capsules of white powder which
he thought to be and, upon subsequent analysis,
proved to be heroin. In *Gustafson,* the arresting
officer's search yielded a Benson and Hedges ciga-
rette box. Upon his cursory examination "it ap-
peared there were marijuana cigarettes in the
box".

The Court summarized its holding in *Robinson:*
"[I]n the case of a lawful custodial arrest a full
search of the person is not only an exception to
the warrant requirement of the Fourth Amend-
ment, but is also a 'reasonable' search under that
Amendment," and then concluded:

"Having in the course of his lawful search come upon
the crumpled package of cigarettes, [the arresting offi-
cer] was entitled to inspect it; and when his inspection
revealed the heroin capsules, he was entitled to seize
them as 'fruits, instrumentalities or contraband' proba-
tive of criminal conduct." (p 236.)

These opinions were written by Mr. Justice
Rehnquist who, in an earlier case, said for the
Court: "The ultimate standard set forth in the
Fourth Amendment is reasonableness." *Cady v
Dombrowski,* 413 US 433, 439; 93 S Ct 2523, 2527;
37 L Ed 2d 706, 713 (1973).

In both *Robinson* and *Gustafson* there were
motions to suppress and full hearings concerning
the reasonableness of the seizure. Moore did not
move to suppress and there is no reason on this
record to question the reasonableness of the arrest-

ing officer's belief upon his cursory examination that the white powder contained in the aberrant transparent capsules in the curiously unmarked, transparent vial was heroin.[5]

---

[5] Moore was not, in contrast with the defendants in *Robinson* and *Gustafson,* arrested for a traffic offense.

Mr. Justice Powell, concurring in *Robinson* and *Gustafson,* recognized the common experience that it is not customary to arrest for many relatively minor traffic offenses:

"In *Gustafson, post,* p 260, the petitioner conceded the validity of the custodial arrest, although that conclusion was not as self-evident as in *Robinson. Gustafson* would have presented a different question if the petitioner could have proved that he was taken into custody only to afford a pretext for a search actually undertaken for collateral objectives. But no such question is before us." *United States v Robinson, supra,* p 238, fn. 2.

In a footnote to the opinion of the Court in *Robinson,* the Court discussed Robinson's claim that the arresting officer may have been aware of Robinson's record of two prior narcotics convictions and may have used the traffic violation arrest "as a mere pretext for a narcotics search which would not have been allowed by a neutral magistrate" had the officer sought a warrant. Police department regulations required an officer summarily to arrest and take to the station house for booking a person, such as Robinson, who is arrested for operating a motor vehicle after revocation of his operator's permit. The Supreme Court responded to Robinson's argument:

"We think it is sufficient for purposes of our decision that respondent was lawfully arrested for an offense, and that Jenks' [the arresting officer's] placing him in custody following that arrest was not a departure from established police department practice. * * * We leave for another day questions which would arise on facts different from these." *United States v Robinson, supra,* p 221, fn. 1.

In *People v Gonzales,* 356 Mich 247, 255; 97 NW2d 16 (1959), this Court answered in the negative the following question: "May police who stop an automobile on a Michigan highway to issue a traffic ticket also routinely search the automobile under Michigan law?" The Court observed that, "the officers had no intention of incarcerating Leal [the driver] or detaining him further. There were no fruits of the traffic offense to search for, nor any need to search for the means by which it had been committed. And since no further detention was contemplated, there was no need to search for weapons or other means of possible escape from custody."

*Robinson* and *Gustafson* do not conflict with *Gonzales;* as the United States Supreme Court carefully noted the validity of the custodial arrests was not challenged in either case.

We express no opinion about the propriety of a warrantless seizure and examination by someone other than the arresting officer or about an examination not conducted incidental to the custodial arrest or immediately following at the station house, or about the constitutional validity of an examination by the arresting officer of the seized

While Const 1963, art 1, § 11 protects against "unreasonable searches and seizures", its proviso prohibiting the exclusion from evidence of "any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house", precludes a construction of the Michigan search and seizure clause imposing a higher standard of reasonableness[6] for searches and seizures of items named in the proviso than the United States Supreme Court has held applicable under the Fourth Amendment.[7] In *People v Pennington,* 383 Mich 611; 178 NW2d 471 (1970), this Court held the narcotic and firearms proviso invalid under the Federal constitution only to the extent it would permit receipt of evidence barred under the Fourth and Fourteenth Amendments as construed by the United States Supreme Court.

### III

In contrast with *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), Moore's attorney did not ask the judge to exclude, in the exercise of discretion, reference to Moore's prior conviction record. Since he did not invoke the judge's discretion, Moore cannot fault the judge for failing to exercise it when he allowed impeachment on the basis of prior convictions.[8]

---

material any more intensive or time-consuming than a cursory examination like those conducted by the arresting officers in *Robinson, Gustafson* and this case. *Cf. People v Trudeau,* 385 Mich 276, 279–281; 187 NW2d 890 (1971); *People v Roderick Walker,* 27 Mich App 609; 183 NW2d 871 (1970).

[6] Contrast *State v Elkins,* 245 Or 279; 422 P2d 250 (1966), and *Caver v Kropp,* 306 F Supp 1329 (ED Mich, 1969).

[7] *Cf. People v Turner,* 390 Mich 7; 210 NW2d 336 (1973) (entrapment); *People v White,* 390 Mich 245; 212 NW2d 222 (1973) (double jeopardy), where this Court established standards higher than the Federal standards.

[8] Similarly *see People v Pollard,* 39 Mich App 291; 197 NW2d 546

Refusing to consider this unpreserved issue on
its merits is not inconsistent with resolution of the
similarly unpreserved search and seizure issue on
its merits. Moore could not have been convicted
without introduction of the heroin; the impeach-
ment of Moore by reference to his past convictions
was not necessarily decisive. Additionally, *Jackson*
does not require a trial judge to exclude reference
to a defendant's conviction record; it only requires
that he exercise his discretion before deciding
whether to permit reference to a conviction record.
In contrast, a judge presented with a meritorious
search and seizure claim is obliged to exclude the
impermissibly obtained evidence.

## IV

In *United States v Tucker,* 404 US 443, 445–446,
448; 92 S Ct 589, 591–592; 30 L Ed 2d 592, 595, 597
(1972), the United States Supreme Court, in a post-
conviction proceeding instituted a number of years
after Tucker's conviction, affirmed the judgment of
the Ninth Circuit remanding the case to the dis-
trict court for resentencing "without consideration
of any prior convictions which are invalid under
*Gideon v Wainwright,* 372 US 335 [83 S Ct 792; 9
L Ed 2d 799; 93 ALR2d 733 (1963)]."

Tucker's three previous state felony convictions
preceded *Gideon.* It was established that two of
them were constitutionally infirm because Tucker
"had been unrepresented by counsel, and that he
had been 'neither advised of his right to legal
assistance nor [had] he intelligently and under-
standingly waive[d] [his] right to the assistance of
counsel' ". 404 US 445. The Court, while reassert-
ing the "wide discretion" granted a judge in sen-

(1972); *People v Downs,* 45 Mich App 130; 206 NW2d 241 (1973);
*People v Calvin Jones,* 44 Mich App 633, 638; 205 NW2d 611 (1973).

tencing, remanded for resentencing because the sentence "might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained". The Court observed that if the sentencing judge "had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding". 404 US p 448.

Although *Tucker* arose in a Federal post-conviction proceeding challenging a Federal conviction and sentence, its retroactive application to state convictions has been accepted by a number of state courts,[9] including our Court of Appeals.[10] We conclude, in light of the consistent retroactive application in state criminal proceedings of *Gideon* and its progeny's expansion of the right to counsel,[11] that *Tucker* is applicable with full retroactivity to all sentences imposed by Michigan courts.

In *Loper v Beto*, 405 US 473, 480; 92 S Ct 1014,

---

[9] *Towers v Director, Patuxent Institution,* 16 Md App 678; 299 A2d 461 (1973); *Howard v State,* 280 So 2d 705 (Fla App, 1973); *State v Flores,* 511 P2d 414 (Or App, 1973). Similarly, *see Collins v State,* 129 Ga App 87; 198 SE2d 707 (1973) and *Baldwin v State,* 499 SW2d 7 (Tex Crim App, 1973), which may, however, have been tried after *Tucker* was decided.

The Supreme Court of Pennsylvania cited the necessity to follow *Tucker* as one of the reasons for adopting a policy of mandatory presentence disclosure. *Commonwealth v Phelps,* 450 Pa 597; 301 A2d 678, 683–684 (1973). *Cf. People v McGaha,* 10 Ill App 3d 1051; 295 NE2d 476 (1973).

[10] *People v Eugene Jones,* 47 Mich App 160; 209 NW2d 322 (1973); *People v Gavin,* 50 Mich App 743; 213 NW2d 758 (1973).

[11] *Loper v Beto,* 405 US 473; 92 S Ct 1014; 31 L Ed 2d 374 (1972); *Doughty v Maxwell,* 376 US 202; 84 S Ct 702; 11 L Ed 2d 650 (1964); *Pickelsimer v Wainwright,* 375 US 2; 84 S Ct 80; 11 L Ed 2d 41 (1963) *(Gideon* fully retroactive); *Burgett v Texas,* 389 US 109; 88 S Ct 258; 19 L Ed 2d 319 (1967) (a defendant cannot be tried under a recidivist statute when he did not have counsel at the time of his prior convictions).

1018; 31 L Ed 2d 374, 380 (1972), the Court, again reiterating its guiding principle that "a conviction obtained in violation of *Gideon v Wainwright* [cannot] be used against a person either to support guilt or enhance punishment for another offense",[12] further extended *Gideon* by affirmatively answering the question posed in the petition for certiorari: "Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?" As *Loper* was a Federal habeas corpus proceeding challenging a state court conviction and itself applied its principle with full retroactivity, its holding and retroactivity is directly applicable to state court proceedings.[13]

## V

Moore, anticipating neither *Tucker* nor *Loper*, did not make a factual record at the trial level regarding the invalidity of his prior convictions. The prosecutor has remedied this deficiency by furnishing, in one case, a copy of the docket entries showing that Moore apparently had counsel and, in the other case, a transcript evidencing Moore's proffer and the acceptance of his plea of

---

[12] *Loper v Beto,* p 481, quoting *Burgett v Texas, supra,* p 115.

[13] Several state courts on the constitutional authority of *Loper's* predecessors had already evolved an exclusionary rule like the rule established in *Loper* prior to the Supreme Court's decision in that case. *See Spaulding v State,* 481 P2d 389 (Alas, 1971); *In re Dabney,* 71 Cal 2d 1; 76 Cal Rptr 636; 452 P2d 924 (1969); *Johnson v State,* 9 Md App 166; 263 A2d 232 (1970); *State v Koch,* 118 NJ Super 421; 288 A2d 295 (1972); rule modified and extended in light of *Loper,* 119 NJ Super 184; 290 A2d 738 (1972).

Following *Loper,* several other state courts have either applied *Loper* or recognized its applicability. *Fee v State,* — Tenn —; 497 SW2d 748, 750 (1973); *Commonwealth v Barrett,* 296 NE2d 712 (Mass App, 1973); *Wood v State,* 478 SW2d 513 (Tex Crim App, 1972).

guilty. The transcript shows that Moore did not have counsel and, although he pleaded poverty, he was not offered counsel.

The apparently invalid conviction was a 1949 conviction for breaking and entering in the nighttime. The apparently valid conviction was in 1958 for illegal possession of narcotics. Proceeding on these assumptions, we cannot find that the impeachment of Moore on the basis of his 1949 conviction "might well have influenced the outcome of the case" and accordingly we find no violation of *Loper.* Moore was charged in this case with possession of narcotics. Once Moore was impeached on the basis of his apparently valid 1958 conviction for possession of narcotics, the credibility of his defense that the vial was not his was so undermined that his credibility could not have been further damaged by reference to his apparently void 1949 conviction.[14] We, accordingly, affirm his conviction.

While a harmless error rule might also be applied to a *Tucker* claim, from a practical point-of-view, in contrast with a *Loper* claim which if meritorious requires a new trial, in most cases a judge can more readily resentence a convicted person than determine whether whatever consideration was given an invalid conviction at sentencing was harmless. Also, a determination of harmlessness would invite further appeal. And, even more importantly, the United States Supreme Court has indicated that the question is whether the sentence "*might* have been different" if the sentencing judge had known that the earlier convictions had been unconstitutionally obtained.

---

[14] This ruling does not preclude Moore, in further proceedings at the trial court level, from attacking the validity of his 1958 narcotics conviction. If he can establish its constitutional infirmness, then our analysis of the *Loper* issue should be reconsidered by the trial court.

(Emphasis supplied.) *United States v Tucker, supra,* p 448.

As in *Tucker, supra,* p 447, the "record in the present case makes evident that the sentencing judge gave specific consideration" to Moore's previous invalid conviction before imposing sentence.[15] We, therefore, need not decide whether, if the record was less clear, there should be a preliminary inquiry whether the sentencing judge considered the invalid conviction.

The rule which we glean from what the United States Supreme Court did in *Tucker* is that where the record shows that the sentencing judge considered a conviction invalid under *Gideon* an appellate court will remand for resentencing. Accordingly, we remand for resentencing.

## VI

In the future, post-sentencing *Tucker* claims should be initially decided by the sentencing judge or his successor. He is in the best position to explore and decide the factual issues and, if necessary, the defendant can then be resentenced. The Court of Appeals may refrain from considering a *Tucker* claim until the sentencing court has had an opportunity to resolve it.

To invoke a *Tucker* hearing, the defendant must (1) present prima facie proof that a previous conviction was violative of *Gideon,* such as a docket entry showing the absence of counsel or a tran-

---

[15] When Moore was sentenced in this case the judge adverted to his earlier convictions saying: "[Y]ou've had prison of 1-1/2 to 15, 1-1/2 to 5, 6 to 10, and one by Judge Newblatt in 1967 of 8 to 10, which however he set aside this year."

The 1-1/2 to 15 year sentence was imposed for Moore's 1949 breaking and entering conviction.

The only reasonable inference from the foregoing is that the judge did consider Moore's uncounseled 1949 conviction when sentencing him in this case.

script evidencing the same; or (2) present evidence that he has requested such records from the sentencing court and it has failed to reply or has refused to furnish copies of records within a reasonable period of time, say four weeks. Upon such presentation, either (1) or (2), the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction. Thus, if the prosecutor contends that the defendant waived counsel, the burden will be on him to show affirmative record evidence of waiver.

If the prosecutor obtains and furnishes the judge and the defendant or his lawyer with photocopies of records establishing the constitutional validity of the prior conviction, the judge may decide the matter on the papers presented unless the defendant, on notice, shows cause to hold a hearing at which he is present. Unless the prosecutor furnishes such evidence within one month of the defendant's motion, the judge shall set the matter for an early hearing and order the production of the defendant at the hearing.

We have considered the collateral attack doctrine set forth in *People v Gavin,* 50 Mich App 743; 213 NW2d 758 (1973), urged upon us by the prosecutor, but are unpersuaded.[16] A defendant will not be required "first [to] establish in separate post-conviction actions that the underlying convictions are invalid". Clearly, a Michigan trial court is competent to resolve the factual issues regarding the constitutional validity of a defendant's

[16] *Gavin* is based on *Brown v United States,* 483 F2d 116, 119 (CA 4, 1973), where the Court declared that it would require "a prisoner who bases his *[Tucker]* attack against one sentence on a collateral attack on another state sentence, particularly, when imposed in a foreign jurisdiction, to attack first the underlying sentence in the court imposing that sentence."

There is, however, no problem of Federal-state relations where the prior convictions were in Michigan.

previous Michigan convictions.[17] A Michigan court may also properly determine the validity of convictions in other state courts and the Federal courts for the limited purpose of reassessing the validity of a Michigan sentence.

Requiring a defendant seeking *Tucker* relief from a Michigan sentence to first attack the previous underlying convictions in the trial courts where he was convicted would unnecessarily add legal steps and compound the misery, not only for the defendant and any lawyer who may be representing him, but also for the taxpayers who ultimately foot the bill for all these procedures. Most all these claimants will still be indigent, by definition with prior records, probably lengthy sentences and quite willing to besiege the courts until the matter is resolved on the merits.

Conviction affirmed. Remanded for resentencing.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, WILLIAMS, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

---

[17] Moore's previous convictions were both Michigan convictions.