PEOPLE v NELSON

1. CRIMINAL LAW—RIGHT TO COUNSEL—CONSTITUTIONAL LAW—PROS-
PECT OF IMPRISONMENT.

The right to counsel extends to those accused of an offense for
which there is a prospect of imprisonment.

2. CRIMINAL LAW—PRIOR CONVICTIONS—RIGHT TO COUNSEL—SEN-
TENCING.

A conviction obtained in violation of a person's right to counsel
may not be used against the person either to support guilt or
enhance punishment for another offense.

3. CRIMINAL LAW—PRIOR CONVICTIONS—RIGHT TO COUNSEL—HEAR-
INGS—BURDEN OF PROOF.

A defendant, to obtain a hearing to establish whether a prior
conviction was unconstitutionally obtained in violation of his
right to counsel and whether the prior conviction was used to
enhance the punishment for a recent conviction, must (1)
present prima facie proof that the previous conviction was
violative of *Gideon v Wainwright,* 372 US 335 (1963), such as a
docket entry showing the absence of counsel or a transcript
evidencing the same, or (2) present evidence that he has re-
quested such records from the sentencing court and it has
failed to reply or has refused to furnish copies of records within
a reasonable period of time, say four weeks; upon such presen-
tation, either (1) or (2), the burden will then be upon the
prosecutor to establish the constitutional validity of the prior
conviction; thus if the prosecutor contends that the defendant
waived counsel, the burden will be on him to show affirmative
record evidence of waiver.

4. CRIMINAL LAW—PRIOR CONVICTIONS—RIGHT TO COUNSEL—TUCKER
HEARING—WAIVER—HABITUAL OFFENDER—STATUTES.

A defendant who pleaded guilty to a habitual offender charge did
not waive his right to a *Tucker* hearing to determine whether

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 309.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 316, 317.
[4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 18.

prior convictions on which the charge was based were constitutionally infirm because they were obtained in violation of the defendant's right to counsel where the plea was made prior to the date of a Michigan Supreme Court precedent which established the procedure for invoking a *Tucker* hearing (MCLA 769.10; MSA 28.1082).

Appeal from Van Buren, David Anderson, Jr., J. Submitted October 6, 1976, at Grand Rapids. (Docket No. 26297.) Decided January 17, 1977.

Donald L. Nelson, also known as Donald L. Bozill, was convicted, on his plea of guilty, of driving under the influence of alcohol and of being a second felony offender. Defendant moved to reopen his conviction as a second felony offender. Motion denied. Defendant appeals by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Ward S. Hamlin, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Green & Moon, P. C.* (by *Barry L. Moon* and *Ronald L. Haldy),* for defendant.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and T. M. BURNS, JJ.

D. E. HOLBROOK, J. The instant case presents a sad tale. Defendant herein has been found guilty of driving under the influence of alcohol, MCLA 257.625; MSA 9.2325. He has received the maximum sentence allowable for that offense—five years. In addition, defendant pled guilty to a supplemental information as a second-felony offender pursuant to MCLA 769.10; MSA 28.1082. The prior offense under the habitual offender provision was a

June 7, 1968, conviction for driving under the influence, third offense, a felony. This resulted in an additional 2-1/2 year sentence maximum. Therefore, defendant received a sentence of 5 to 7-1/2 years at hard labor in the Southern Michigan Prison.

There are probably few cases which reflect more sadly on our society. Defendant has been arrested and charged with driving under the influence six times in a period from 1956 until the instant charge in 1973. Five of these six occurred in the period from 1966 to 1973. Also, five of the offenses occurred in the county where defendant has lived all his life. Defendant has pled guilty each time. There can be no doubt that defendant has constituted a very real threat to society. We have long recognized that drivers of automobiles and alcohol are not a compatible combination. Over one-half of automobile fatalities are directly attributable to the use of alcohol. At the same time, we have been slower to recognize that alcoholism is a disease and one of our most serious social problems. See *Powell v Texas,* 392 US 514; 88 S Ct 2145; 20 L Ed 2d 1254 (1968).[1] Fortunately, we have recognized

[1] We will not join the debates spurred by *Robinson v California,* 370 US 660; 82 S Ct 1417; 8 L Ed 2d 758 (1962), and *Powell v Texas,* 392 US 514; 88 S Ct 2145; 20 L Ed 2d 1254 (1968). *Robinson* held that it was cruel and unusual punishment to convict a narcotics addict of the offense of being a narcotics addict. *Powell* held that there was no violation of the cruel and unusual punishment clause where defendant who had a drinking problem was found guilty of violating the statute which made it unlawful to be intoxicated in a public place. This was because defendant was not being punished for his status or condition. Members of the Court differed in their analysis of the concept of alcoholism; that is, its definition and identification. Nevertheless, we agree with the majority opinion in *Powell* where they state:

"Despite the comparatively primitive state of our knowledge on the subject, it cannot be denied that the destructive use of alcoholic beverages is one of our principal social and public health problems. The lowest current informed estimate places the number of 'alcoholics' in America (definitional problems aside) at 4,000,000, and most

that this disease can be treated and cured. However, we have been unable to reach many who suffer from this crippling ailment. Although there is controversy involved in the research findings on alcoholism, certain universals have been recognized.

"Among the definitely established facts of great importance * * * is that 'some people find it impossible to refrain from drinking alcohol in spite of repeated experiences which prove to them that its use always leads to very unpleasant situations.'" Hall, General Principles of Criminal Law (2d ed), Findings of Research on Alcoholism, p 549.

This would certainly seem to describe defendant's unfortunate experience. As noted, five of the six convictions occurred in his home county. Defendant has been fined, jailed and imprisoned for driving while under the effects of alcohol. Certainly defendant must be removed from the streets before he kills himself or someone else. However, the sad reflection on society is inescapable. Defendant has been found by our courts to have committed this offense over and over again, yet defendant has been fined or imprisoned and apparently not helped. Society has also not been helped. It continues to be threatened by defendant's actions. It is apparent, and should have been so long ago, that defendant will continue to drive and drink. We can only hope that somehow in the future defendant will be able to rise above his disorder and obtain help to defeat it. Our sorrow is that society

authorities are inclined to put the figure considerably higher. The problem is compounded by the fact that a very large percentage of the alcoholics in this country are 'invisible'—they possess the means to keep their drinking problems secret, and the traditionally uncharitable attitude of our society toward alcoholics causes many of them to refrain from seeking treatment from any source." (Footnotes omitted.) 392 US at 526–527; 88 S Ct at 2151; 20 L Ed 2d at 1264.

has been unable to effectively aid him thus far. We do note that fortunately in recent years there has been an increase in the number of alcohol treatment facilities.

Defendant pled guilty to the instant charge on April 16, 1973. The plea was a result of a bargain whereby the prosecution had agreed to drop two other prior felonies[2] from the original fourth offender supplemental information. The potential penalty this original information carried was a maximum of life imprisonment. Defendant, who on this charge was represented by counsel, chose to accept the deal and the 5 to 7-1/2 year sentence on the driving under the influence, third offense, second felony charges.

On July 15, 1975, appellant filed a "motion to reopen his conviction under the habitual offender statute". The reasons given for this motion were that under authority of *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972), and *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), the court is prohibited from either supporting guilt or enhancing punishment by prior convictions which were obtained in violation of *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799; 93 ALR2d 733 (1963).

We recognize that defendant makes serious allegations. In one of the landmark decisions of our time, the Supreme Court announced that all those accused of a felony must have the assistance of counsel. *Gideon v Wainwright, supra.* In the years that have followed, the protection of this right has been expanded. *Gideon* was given retroactive effect in *Pickelsimer v Wainwright,* 375 US 2; 84 S Ct 80; 11 L Ed 2d 41 (1963), and *Kitchens v Smith,*

---

[2] The first conviction was in 1954, unarmed robbery, while the other conviction was in 1962, grand larceny.

401 US 847; 91 S Ct 1089; 28 L Ed 2d 519 (1971). The Court further expanded the right to counsel to any offense where there is a prospect of imprisonment. *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972). This decision was also held to be entitled to retroactive application. *Berry v Cincinnati,* 414 US 29; 94 S Ct 193; 38 L Ed 2d 187 (1973).

We note that MCLA 257.625; MSA 9.2325, expressly provides for up to 90 days in jail on a first offense, up to one year in jail on a second offense, and provides that a third conviction shall be a felony, which is punishable by up to five years.[3] Prosecution under this statute thus requires that defendant be given the assistance of counsel. In the instant case, there has been no factual determination at the trial court level as to the validity of defendant's prior conviction upon which his conviction as a habitual offender rests.

Defendant's convictions on driving under the influence charges occurred in 1956, 1966, 1967, 1968, 1972 and this most recent conviction was in 1973. The prosecution by affidavit alleges that at the 1972 conviction defendant was represented by counsel and at the 1968 conviction defendant effectively waived counsel. The prosecution admits that, in all likelihood, the other convictions were obtained without defendant having had the benefit of counsel. The prosecution weakly maintains that the 1968 and 1972 felony convictions were otherwise valid and therefore this conviction, also by plea, is a valid repeat felony conviction. This ignores the fact that the basis for the earlier felony convictions consisted of possible invalid misdemeanor convictions because of a denial of the essential right to counsel. Therefore, if only the

___

[3] See MCLA 257.902; MSA 9.2602.

1968 and 1972 convictions were valid, they were misdemeanors and the instant case would be the first conviction of this offense as a felony. The Supreme Court recently noted in *Tucker, supra:*

"In *Burgett [v Texas,* 389 US 109, 115; 88 S Ct 258, 262; 19 L Ed 2d 319, 324–325 (1967)] we said that '[t]o permit a conviction obtained in violation of *Gideon v Wainwright* to be used against a person either to support guilt or enhance punishment for another offense * * * is to erode the principle of that case.' " *Tucker,* 404 US at 449; 92 S Ct at 593; 30 L Ed 2d at 597.

Therefore, if along the line impermissible convictions were used to enhance sentences or classifications of crimes, the foundation for defendant's felony conviction in the instant case must fall.

Therefore, we deem that defendant is entitled to a hearing to establish whether his earlier convictions were unconstitutionally obtained, and whether they were improperly used to enhance his most recent conviction. The prosecution apparently maintains, however, that defendant has not proceeded in a proper manner to raise this issue and that his plea of guilty waived his right to challenge his earlier convictions.

In *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), our Supreme Court held that the rule in *United States v Tucker* was applicable with full retroactivity to all sentences imposed by Michigan courts. In *Tucker* the United States Supreme Court affirmed the judgment of the 9th Circuit remanding the case to the district court for resentencing without consideration of any prior convictions which were invalid under *Gideon.* We see that *Tucker* was decided in 1972. This conviction was obtained in 1973. *Moore* was decided in 1974. Arguably, defendant's counsel should have been

aware of *Tucker* and his failure to raise *Tucker* could possibly be deemed as a waiver. *Tollett v Henderson,* 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973). However, in *Moore* the proper procedure was clarified when the Court recognized that the sentencing judge should hear *Tucker* claims under certain circumstances. The Court stated the following requirements to invoke a *Tucker* hearing:

"[T]he defendant must (1) present prima facie proof that a previous conviction was violative of *Gideon,* such as a docket entry showing the absence of counsel or a transcript evidencing the same; or (2) present evidence that he has requested such records from the sentencing court and it has failed to reply or has refused to furnish copies of records within a reasonable period of time, say four weeks. Upon such presentation, either (1) or (2), the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction. Thus, if the prosecutor contends that the defendant waived counsel, the burden will be on him to show affirmative record evidence of waiver." *Moore, supra,* at 440–441; 216 NW2d at 777–778.

Arguably, once *Moore* was announced, this hearing should be sought prior to trial. A guilty plea possibly could waive a subsequent *Tucker* claim. We need not decide that issue, however. *Moore* was not announced until after defendant pled guilty in the instant case. In a case such as this, we will grant defendant the benefit of the doubt and consider that defendant and his counsel were not aware of *Tucker.* Therefore, we hold that defendant did not waive any right to a *Tucker* hearing by failing to meet the *Moore* standards prior to trial by virtue of his guilty plea.

We must determine, however, if the *Moore* standards have been essentially complied with to allow

defendant a hearing on his claims. At the motion hearing which took place on August 11, 1975, the prosecution argued:

"As to resentencing, I talked with defense counsel outside of the court here and notified him that it wasn't until August 7th that we received information that the defense counsel—that we received a letter from him that he had sent out to the various courts, to let us know that he was going to attack the prior convictions.

"Now, he did send our office a letter requesting that information, I think as far back as June of this year. However, like I said, I did not know that he had not received knowledge—or that he had not received any information concerning the fact that the defendant did not have counsel on two prior D.U.I.L. convictions. I also question *People v Moore* and contend that it does not apply to this proceeding."

It is apparent that defendant through his counsel had attempted to obtain the information necessary. Defendant's counsel in his brief maintained that the following occurred:

"On June 5, 1975, a letter was sent to the county clerks and prosecuting attorneys of both Berrien and Van Buren Counties. The letters requested, and put them on notice to furnish, docket entries and transcripts of appellant's prior DUIL convictions, * * * . Appellant's intent was to ascertain the proof, or lack thereof, of the propriety of these convictions. No proof was supplied. In an exaggerated application of the *Moore* procedure a reply was awaited for over the required four weeks (4). With the burden now placed on the respective prosecutors to prove the affirmative waiver of appellant's *Gideon* rights, appellant on July 15, 1975, petitioned the Circuit Court of Van Buren County, the trial court, for a *Tucker* hearing and subsequent resentencing."

This corresponds with the prosecutor's statement

at the motion hearing. This was sufficient to place the burden on the prosecution according to the *Moore* standards. The trial court's failure to hold the *Tucker* hearing was error. Therefore, we conclude that the procedural requirements were met and that defendant is entitled to a hearing and very probably a resentencing. We would also redirect the court's attention to our earlier discussion of defendant's alcohol problem and suggest that this be a consideration at sentencing.

Defendant also raises double jeopardy and cruel and unusual punishment arguments. We are not reviewing this case on direct appeal as of right. Our review is only of the denial of defendant's motion to reopen his conviction under the habitual offenders act. Our review is limited to the propriety of the denial of that motion.

Reversed and remanded.