PEOPLE v DAOUST

Docket No. 188192. Submitted July 3, 1997, at Grand Rapids. Decided February 10, 1998, at 9:00 A.M. Leave to appeal sought.

Tod M. Daoust was convicted by a jury in the Bay Circuit Court, Eugene C. Penzien, J., of second-degree child abuse for the abuse of his girlfriend's daughter. He appealed.

The Court of Appeals *held*:

1. There is no merit to the defendant's contention that he should have been allowed to exercise one of his remaining peremptory challenges when a juror indicated on the second day of the trial that he may have attended high school with the defendant's girlfriend. The right to peremptory challenges exists only until the jury is sworn.

2. A defendant is entitled to relief when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn only if the defendant can establish actual prejudice by the presence of the juror in question or that the juror was properly excusable for cause. The defendant in this case does not allege actual prejudice and concedes that the juror in question was not excusable for cause.

3. The court did not abuse its discretion in admitting expert testimony regarding the battered woman syndrome that was relevant and helpful to the jury.

4. The court did not abuse its discretion in admitting evidence of the defendant's prior bad acts that was not offered to show that the defendant had a bad character and helped to put the charged activity in context by enabling the jury to better understand the dynamics of the relationship between the defendant, his girlfriend, and her daughter with respect to the care and discipline of the child.

5. The court's jury instructions regarding the elements of child abuse fairly presented the issues to be tried and sufficiently protected the defendant's rights.

6. The court properly refused to instruct the jury that the prosecution had the burden of proving that there was no theory of innocence possible that would, without violation of reason, accord with the facts. The prosecution must only prove its theory beyond a reasonable doubt in the face of whatever contradictory evidence the

defendant may provide and need not negate every reasonable theory consistent with the defendant's innocence.

7. The court did not abuse its discretion in denying the defendant's motion for a new trial that alleged that the verdict was against the great weight of the evidence.

8. The defendant is not entitled to a remand for a hearing under *United States v Tucker*, 404 US 443 (1972), to determine if the court, in determining the defendant's sentence, erred in considering the defendant's prior juvenile delinquency adjudications obtained without the benefit of counsel and that did not result in his incarceration. To prevail with regard to a request for *Tucker* relief, a defendant must present prima facie proof that a prior conviction or juvenile adjudication was obtained in violation of his constitutional right to counsel. A juvenile is not deprived of his constitutional right to counsel in cases where the juvenile adjudication does not ultimately result in a deprivation of the juvenile's physical liberty by way of incarceration.

Affirmed.

1. CRIMINAL LAW — JURY TRIALS — PEREMPTORY CHALLENGES.

A criminal defendant has no constitutional right to exercise peremptory challenges; the right to peremptory challenges is granted by statute and court rule and exists only until the jury is sworn (MCL 768.12; MSA 28.1035; MCR 6.412[E][1]).

2. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO IMPARTIAL JURY — PEREMPTORY CHALLENGES.

A defendant is not denied the right to an impartial jury simply by being unable to make the most effective use of peremptory challenges, but is denied such right when a juror removable for cause is allowed to serve on the jury (US Const, Am VI; Const 1963, art 1, § 20).

3. CRIMINAL LAW — JURY TRIALS — IMPARTIAL JURORS.

A defendant involved in a criminal trial where information potentially affecting a juror's ability to act impartially is discovered after the jury has been sworn and the juror is allowed to remain on the jury is entitled to appellate relief only if it can be established that the defendant was actually prejudiced by the presence of the juror or that the juror was properly excusable for cause.

4. EVIDENCE — EXPERT TESTIMONY — BATTERED WOMAN SYNDROME.

Expert testimony regarding the generalities or characteristics of the battered woman syndrome may be admitted for the limited purpose of describing the uniqueness of a specific behavior brought out at trial.

5. CRIMINAL LAW — BURDEN OF PROOF.

> The prosecution need not negate every reasonable theory consistent with a defendant's innocence; it must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide.

6. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL — PRIOR CONVICTIONS — SENTENCES.

> The Court of Appeals will not remand for a hearing under *United States v Tucker*, 404 US 443 (1972), to determine if a trial court in determining a defendant's sentence erred in considering the defendant's prior juvenile delinquency adjudications that were obtained without the benefit of counsel where the prior adjudications did not result in the defendant's incarceration; a defendant must present prima facie proof that a prior conviction or juvenile adjudication was obtained in violation of the defendant's constitutional right to counsel in order to prevail with regard to a request for *Tucker* relief; a juvenile is not deprived of the constitutional right to counsel in cases where the juvenile adjudication does not ultimately result in the deprivation of the juvenile's physical liberty by way of incarceration.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Joseph K. Sheeran*, Prosecuting Attorney, and *Martha G. Mettee*, Assistant Prosecuting Attorney, for the people.

*Marcelyn A. Stepanski*, for the defendant on appeal.

Before: SAAD, P.J., and NEFF and REILLY, JJ.

REILLY, J. Defendant was charged in separate informations with two counts of first-degree child abuse, MCL 750.136b(2); MSA 28.331(2)(2). The charges were based on separate injuries to the head and hand of Megan Hoppe, the daughter of defendant's girlfriend, Teresa Hoppe. After a consolidated trial, defendant was convicted by a jury of one count of second-degree child abuse, MCL 750.136b(3); MSA 28.331(2)(3). Defendant was sentenced to a prison

term of thirty-two to forty-eight months and appeals as of right. We affirm.

In April 1994, Teresa brought Megan to the hospital where an emergency medicine specialist discovered that Megan had sustained several injuries including (1) a brain injury that caused seizures and partial paralysis, (2) numerous bruises in various stages of healing, and (3) a glove-type burn to her hand that appeared to have resulted from an intentional immersion in some hot substance. Megan was also malnourished and dirty. Because the injuries appeared to have been intentionally inflicted, the police were contacted. Initially, Teresa explained that Megan's injuries were caused by various household accidents. However, she eventually admitted that some of Megan's bruises may have resulted from her efforts at discipline. Teresa also denied having a boyfriend and insisted that she was raising Megan alone.

Teresa testified at defendant's trial while charges of first-degree child abuse for the same incident were still pending against her. She explained that she became involved with defendant in 1993 when they both lived in the city of Alpena. In order to save on the cost of child care, defendant watched Megan while Teresa worked. Defendant also assumed the responsibility of disciplining Megan. In February 1994, a Protective Services worker in Alpena informed Teresa that a friend of hers, Rebecca Chojnacki, had reported bruises on Megan. Teresa was advised to take Megan to the hospital. However, defendant warned Teresa that if she took Megan to the hospital he would "take care" of her and then "go after Megan and finish with her." Shortly thereafter, defendant and Teresa moved to Bay County.

When defendant and Teresa first arrived in Bay County, they stayed with Teresa's sister. While staying there, Teresa went out for a newspaper and, upon returning, discovered that Megan's hand was burned. Defendant told her that Megan had injured herself while washing her hands in the bathroom sink. Teresa wanted to take Megan to the hospital, but did not because defendant was afraid that "Protective Services would get involved and say that it was done intentionally." Eventually, defendant and Teresa found an apartment of their own. On April 20, 1994, defendant, Teresa, and Megan were walking in a field by their new apartment looking for deer. Teresa left Megan alone with defendant and twenty or thirty minutes later defendant returned to the apartment carrying Megan in his arms. Megan looked dazed and could not focus or stand on her own. Defendant told Teresa that Megan had tripped and fallen face-first into a culvert. Teresa wanted to take her to the hospital, but defendant would not allow it because Megan "had bruises on her butt" and defendant "was afraid Protective Services would get involved again." After a few days, however, Teresa insisted on taking Megan to the hospital because she was not getting better. As Teresa was preparing to go, defendant instructed her to tell the doctors that Megan had hurt herself climbing to get some toys. Teresa explained that she initially attempted to deflect the blame for Megan's injuries away from defendant because she was afraid of him.

Defendant denied ever taking part in Megan's discipline and explained that discipline was Teresa's responsibility. According to defendant, Megan's hand was burned while he, rather than Teresa, was out get-

ting a newspaper. He testified that Teresa told him
that Megan accidentally burned herself in the sink.
Defendant also denied Teresa's story about their walk
in the field and Megan's subsequent injury. He testi-
fied that on April 21, 1994, he was away from home
for the entire day visiting family members. When he
returned to the apartment at 2:00 A.M. the following
morning, Teresa told him that Megan had fallen down
and hurt herself. Defendant explained that he told
Teresa to take Megan to the hospital because she did
not seem to be getting any better. Defendant denied
ever threatening Teresa with violence. On the basis of
this evidence, the jury acquitted defendant of the
charge relating to Megan's head injury, but found him
guilty of second-degree child abuse for the injury to
Megan's hand. Defendant then brought this appeal.

Defendant first argues that the trial court deprived
him of his right to exercise his peremptory challenges
in an intelligent and effective manner when it refused
to remove a juror during the course of the trial. We
disagree. On the morning of the second day of
defendant's trial, during a break in Teresa's testimony,
one of the jurors indicated to a bailiff that he may
have attended junior high school with Teresa. The
juror remembered her as being "quiet and to herself,"
but assured the judge that he could "put aside" his
perceptions in reaching a verdict. Defense counsel
conceded that there were no circumstances justifying
a discharge for cause, but argued that he would have
exercised a peremptory challenge to remove the juror
if he had known the information during voir dire. The
trial court denied defendant's request to remove the
juror.

A criminal defendant has a constitutional right to be tried by a fair and impartial jury, US Const, Am VI; Const 1963, art 1, § 20; *Duncan v Louisiana*, 391 US 145, 149; 88 S Ct 1444; 20 L Ed 2d 491 (1968); *People v Clark*, 220 Mich App 240, 245-246; 559 NW2d 78 (1996). There is, however, no constitutional right to exercise peremptory challenges. *People v Juarez*, 158 Mich App 66, 71; 404 NW2d 222 (1987). In Michigan, the right to peremptory challenges is granted by statute and court rule. MCL 768.12; MSA 28.1035; MCR 6.412(E)(1). This right exists only until the jury is sworn. *Jhons v People*, 25 Mich 499, 503 (1872); see also *People v Lee*, 212 Mich App 228, 252; 537 NW2d 233 (1995). Accordingly, defendant's contention that he should have been allowed to exercise one of his remaining peremptory challenges is without merit.

Defendant also asserts that if he was not entitled to exercise a peremptory challenge during the course of the trial, the trial court should nonetheless have removed the juror because defendant would have exercised one of his peremptory challenges during voir dire had he known of the juror's past association with Teresa.[1] This Court has reasoned that when information potentially affecting a juror's ability to act impartially is discovered after the jury has been sworn, and the juror is allowed to remain on the jury, the defendant is entitled to relief on appeal if it can be established either (1) that the juror's presence on the jury resulted in actual prejudice, (2) that the defendant could have successfully challenged the

---

[1] Without the benefit of a transcript of the voir dire, we do not know whether the juror in question was ever asked about his past association with Teresa. The record also does not indicate whether the witnesses were present in the courtroom during voir dire.

juror for cause, or (3) that the defendant would have "otherwise dismissed" the juror by exercising a peremptory challenge had the information been revealed before trial. See *People v Smith*, 106 Mich App 203, 212-213; 307 NW2d 441 (1981), (After Remand), 122 Mich App 202; 332 NW2d 401 (1981); *People v Johnson*, 103 Mich App 825, 831; 303 NW2d 908 (1981); *People v Graham*, 84 Mich App 663, 668; 270 NW2d 673 (1978). Here, because defendant does not allege actual prejudice and concedes that the juror in question was not excusable for cause, only the third alternative (that the juror would have been "otherwise dismissed") could arguably justify a grant of relief.[2] However, we decline to follow the "otherwise dismissed" language contained in the earlier cases, because (1) it is not based on the defendant's right to an impartial jury and (2) its application requires the trial court to undertake what is essentially a futile task.

A defendant is not denied his right to an impartial jury simply because he is unable to make the most effective use of his peremptory challenges. See *People v Badour*, 167 Mich App 186, 188-190; 421 NW2d 624 (1988), rev'd on other grounds 434 Mich 691; 456 NW2d 391 (1990); see also *People v Crowell*, 186 Mich App 505, 509; 465 NW2d 10 (1990), remanded 437 Mich 1004 (1991). On the other hand, a defendant is denied his right to an impartial jury when a juror

---

[2] Language ostensibly allowing relief upon a showing that the juror would have been "otherwise dismissed" first appeared in this Court's opinion in *Citizens Commercial & Savings Bank v Engberg*, 15 Mich App 438, 440; 166 NW2d 661 (1968). Notably, the *Engberg* Court relied on *Kwaiser v Peters*, 6 Mich App 153; 148 NW2d 547 (1967), aff'd 381 Mich 73; 158 NW2d 877 (1968), a case in which this Court required a showing of prejudice.

removable for cause is allowed to serve on the jury. In some circumstances, this is true even when the information justifying the juror's removal is not discovered until after the trial. See *People v Hannum*, 362 Mich 660, 666-667; 107 NW2d 894 (1961); *People v DeHaven*, 321 Mich 327, 330-334; 32 NW2d 468 (1948). Accordingly, the "otherwise dismissed" language is not based on the defendant's right to an impartial jury. The language also raises practical concerns. We think it would be difficult for a court to reliably determine, in hindsight, whether a defendant possessing different information would have elected to exercise a peremptory challenge. For these reasons, we hold that when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause.[3] *Hannum*, *supra* at 666-667; *DeHaven*, *supra* at 330-334. Because defendant does not contend (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror should have been removed for cause, he is not entitled to relief on this issue.

Defendant next argues that the trial court erred in admitting expert testimony regarding the battered woman syndrome. We disagree. Before permitting expert testimony, a trial court must find that the evidence is from a recognized discipline, relevant and

---

[3] We note that our holding does not address situations in which it is discovered that one of the jurors has lied during voir dire. Here, there was no indication that the juror in question purposefully provided any false answers during voir dire.

helpful to the trier of fact, and presented by a qualified witness. *People v Christel*, 449 Mich 578, 587; 537 NW2d 194 (1995). In Michigan, expert testimony regarding the "generalities or characteristics" of the battered woman syndrome may be admitted for the limited purpose of describing "the uniqueness of a specific behavior brought out at trial." *Id.* at 591. On appeal, the trial court's decision to admit such testimony is reviewed for an abuse of discretion. *Id.* at 587.

In this case, Hedy Nuriel, the executive director of a domestic violence, sexual assault, and child abuse center testified regarding the battered woman syndrome. Nuriel described the dynamics of relationships involving women who live under the constant threat of physical or sexual violence. She explained that certain types of control mechanisms apart from physical violence are often present in such relationships. For example, the man may tell the woman that she is worthless or a bad mother, take control of her money, force her to engage in sexual acts against her will, intimidate her with threats of violence, or attempt to isolate her from her friends and family. According to Nuriel, it would be quite common for the woman in this sort of relationship to lie in order to protect the man. Thus, a woman in this sort of relationship might falsely take the blame for abusing her own child because she may fear that exposing the truth would result in even greater abuse. On cross-examination, Nuriel explained that the basis for the control exercised by the man in such a relationship is the fear that has built up over time. However, on redirect, she testified that a woman could fall into such a pattern of abuse without ever actually being hit, as

long as the threat of violence and other control mechanisms were present.

Defendant does not contest Nuriel's qualifications or dispute the fact that battered woman syndrome evidence comes from a recognized discipline. See *Christel, supra* at 592. Nor does defendant argue that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. See MRE 403. The issue, then, is whether Nuriel's testimony was relevant and helpful to the trier of fact. Although Teresa testified that defendant never actually hit her, she also testified that defendant (1) was verbally abusive, (2) repeatedly threatened to harm Teresa and Megan, (3) discouraged Teresa from seeing her friends and paid extremely close attention to her whereabouts, (4) controlled Teresa's access to her own money, (5) threatened to beat up Chojnacki and leave her for dead after she reported Megan's bruises to Protective Services, and (6) regularly forced Teresa to perform oral sex on him against her will. Teresa further testified that she felt ashamed and guilty when defendant disciplined Megan, but that she was afraid to leave him because of the threats. These circumstances correspond to the circumstances Nuriel described as being consistent with battered woman syndrome. Thus, Nuriel's testimony was relevant and helpful to explain why Teresa might have initially sought to deflect the blame for her daughter's injuries away from defendant while knowing he was responsible. Accordingly, we hold that the trial court did not abuse its discretion in admitting Nuriel's testimony. *Christel, supra* at 587.

Next, defendant incorrectly contends that the trial court erred in admitting evidence of his prior bad

acts. The decision to admit evidence is within the sound discretion of the trial court and should not be disturbed absent an abuse of discretion. *People v Davis*, 199 Mich App 502, 516-517; 503 NW2d 457 (1993). The admissibility of evidence of a defendant's other crimes, wrongs, or acts is governed by MRE 404(b). To be admitted at trial, such evidence must be offered for a proper purpose, which means that the evidence must be offered for some reason other than to show the character of a person in an effort to prove conduct in conformity with such character. The evidence must also be relevant to an issue or fact of consequence at trial (other than by way of a showing of mere propensity). Finally, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. See *People v Vander-Vliet*, 444 Mich 52, 64, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). In application, the admissibility of evidence under MRE 404(b) necessarily hinges on the relationship of the elements of the charge, the theories of admissibility, and the defenses asserted. *VanderVliet*, *supra* at 75.

Specifically, defendant contends that the trial court abused its discretion in admitting evidence that defendant beat Megan while they lived in Alpena. Rebecca Chojnacki testified that in February 1994, while baby-sitting for Teresa and defendant, she discovered that Megan was bruised on the front and back of her body from her ribs to her knees. She also testified that Megan acted as if she was afraid of defendant. After Chojnacki told the police about Megan's bruises, defendant and Teresa arrived at her house to pick up Megan. Chojnacki testified that defendant was angry with her for reporting Megan's

bruises. He told Chojnacki that she did not spank her children hard enough and that he liked to spank them "hard enough to where they'll feel it." He also told her that he was beaten a lot as a child and that he turned out fine because of it. Although both defendant and Teresa told Chojnacki that Teresa had caused Megan's bruises, Teresa testified at trial that defendant was responsible.

Evidence regarding the incident in Alpena was not offered to show that defendant had a bad character. Instead, it helped to put the charged activity in context by enabling the jury to better understand the dynamics of the relationship between defendant, Teresa, and Megan with respect to the care and discipline of Megan. Defendant denied ever participating in Megan's discipline and explained that discipline was Teresa's responsibility. However, the combination of Teresa's testimony that defendant caused Megan's bruises and Chojnacki's testimony about Megan's condition and defendant's reaction to the incident tended to show that defendant believed in extreme physical discipline and that he participated in the discipline of Megan. Thus, the evidence was probative of defendant's possible motivation for causing the charged injuries. The evidence also tended to support the prosecution's battered woman syndrome theory. This is so because the incident in Alpena prompted defendant's threats to Teresa that he would "take care of" her and "finish with" Megan if she took Megan to the hospital and that he would beat up Chojnacki and leave her for dead for reporting Megan's bruises. Accordingly, we hold that the trial court did not abuse its discretion in admitting the evidence regarding the incident in Alpena that served to bolster the prosecution's the-

ory that defendant, rather than Teresa, intentionally harmed Megan and that his motivation for doing so was to provide "discipline." See MRE 404(b)(1); *VanderVliet, supra* at 74-75.

Defendant next argues that the trial court's instructions regarding the elements of child abuse allowed the jury to convict defendant on an omission of duty theory when no such theory was presented by the prosecution's evidence. We disagree. A trial court is required to instruct the jury concerning the law applicable to the case and to fully and fairly present the case to the jury in an understandable manner. MCL 768.29; MSA 28.1052; *People v Mills,* 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instructions to the jury should be considered as a whole rather than extracted piecemeal to establish error. *People v Bell,* 209 Mich App 273, 276; 530 NW2d 167 (1995). "Even if somewhat imperfect, there is no error if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Id.*

Here, the trial court instructed the jury that in order to find defendant guilty of child abuse, it had to find that defendant "had the care of Megan Hoppe." Defendant objected to the following jury instruction defining "care of," arguing that it was a misstatement of law:

> When I use the words "care of," I simply mean that a person is in the position of taking care of a child, and that may be done through the explicit authority of the parent or by actually doing it with or without objection by the parent. It simply means that a person has taken charge over the child even though the parent may also be caring for the child at the same time.

Pursuant to MCL 750.136b(1)(c); MSA 28.331(2)(1)(c) a "person" capable of committing child abuse of any degree is defined as "a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." All provisions of the Penal Code are construed according to the fair import of their terms. MCL 750.2; MSA 28.192; *People v Armstrong*, 212 Mich App 121, 127; 536 NW2d 789 (1995). Although the definition of "person" in MCL 750.136b(1)(c); MSA 28.331(2)(1)(c) does not specifically address the circumstance in which two or more persons have simultaneous authority over a child, the "any other person" language employed by the Legislature is inclusive rather than exclusive. Accordingly, we believe that the challenged instruction accurately presented the law in an understandable manner. Defendant's argument also overlooks the fact that the trial court specifically instructed the jury that, in order to find defendant guilty of second-degree child abuse, it must find that Megan suffered serious physical harm as a result of a reckless act done by defendant.[4] Therefore, we hold that, when considered as a whole, the trial court's instructions with respect to the elements of second-degree child abuse fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Bell, supra* at 276.

Defendant further contends that the trial court erred in refusing to instruct the jury that, because the case was based solely on circumstantial evidence, the

---

[4] The trial court's instructions regarding first-, third-, and fourth-degree child abuse also required a finding that defendant engaged in either an intentional, knowing, or reckless affirmative act.

prosecution had the burden of proving that there was no innocent theory possible that would without violation of reason accord with the facts. See *People v Davenport*, 39 Mich App 252, 256; 197 NW2d 521 (1972). Contrary to defendant's suggestion, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide. *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991). Accordingly, the trial court did not err in refusing to give the requested instruction.

Next, defendant contends that he was denied his right to a fair trial by the cumulative effect of the alleged errors. We disagree. Although one error in a case may not necessarily provide a basis for reversal, it is possible that the cumulative effect of a number of minor errors may add up to error requiring reversal. *People v Morris*, 139 Mich App 550, 563; 362 NW2d 830 (1984). However, because there was no error on any single issue, defendant's argument lacks merit. *Id.*

Defendant next argues that the trial court erred in denying his motion for a new trial brought on the ground that the verdict was against the great weight of the evidence. We disagree. A trial court's decision to grant or deny such a motion is reviewed for an abuse of discretion. *People v Herbert*, 444 Mich 466, 477; 511 NW2d 654 (1993). An abuse of discretion will be found only where the trial court's denial of the motion was manifestly against the clear weight of the evidence. *In re Robinson*, 180 Mich App 454, 464; 447 NW2d 765 (1989).

The evidence in this case presented a credibility contest between defendant and Teresa. There was strong evidence that Megan had been intentionally abused and conflicting evidence regarding which person was responsible. Teresa testified that the injury to Megan's hand occurred while she was elsewhere buying a newspaper and defendant was with Megan. In direct contrast, defendant testified that the injury occurred while he was elsewhere buying a newspaper and Teresa was with Megan. The jury elected to resolve the credibility contest in Teresa's favor, finding defendant guilty of second-degree child abuse on the basis of Megan's burned hand, and the trial court declined to upset this verdict. Questions regarding the credibility of witnesses are to be resolved by the trier of fact, *People v Velasquez*, 189 Mich App 14, 16; 472 NW2d 289 (1991), and may also be reviewed by the trial judge, acting as a " ' "thirteenth juror," ' " *Herbert, supra* at 476, quoting *Dyer v MacDougall*, 201 F2d 265, 272 (CA 2, 1952). However, when reviewing a trial court's decision regarding a motion for a new trial based on the great weight of the evidence, this Court will not attempt to resolve credibility issues anew. *Robinson, supra* at 463-464. Accordingly, we will defer to both the jury and the trial judge who were present in the court room to observe the conflicting testimony of the witnesses.

Finally, defendant argues that he is entitled to a remand for a *Tucker*[5] hearing because, in determining defendant's sentence, the trial court considered prior juvenile delinquency adjudications obtained without

---

[5] See *United States v Tucker*, 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972).

the benefit of counsel. We disagree. A conviction or juvenile adjudication obtained in violation of a person's constitutional right to counsel may not be used against that person to enhance his punishment for another offense. *People v Carpentier*, 446 Mich 19; 521 NW2d 195 (1994); *People v Moore*, 391 Mich 426; 216 NW2d 770 (1974). To prevail with regard to a request for *Tucker* relief, a defendant must present prima facie proof that a prior conviction or juvenile adjudication was obtained in violation of his constitutional right to counsel. See *Carpentier, supra* at 31-35.

The constitutional right to the assistance of counsel is triggered by a defendant's interest in his physical liberty. See, generally, *Lassiter v Dep't of Social Services of Durham Co, North Carolina*, 452 US 18, 25-27; 101 S Ct 2153; 68 L Ed 2d 640 (1981). With respect to juvenile adjudications, the United States Supreme Court has held that juveniles are guaranteed the right to counsel in delinquency proceedings which may result in commitment to an institution in which the juvenile's freedom is curtailed. *In re Gault*, 387 US 1, 41; 87 S Ct 1428; 18 L Ed 2d 527 (1967). With respect to criminal prosecutions, the Supreme Court has held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v Hamlin*, 407 US 25, 37; 92 S Ct 2006; 32 L Ed 2d 530 (1972). Subsequently, in *Scott v Illinois*, 440 US 367, 373; 99 S Ct 1158; 59 L Ed 2d 383 (1979), the Supreme Court explained that actual imprisonment warranted adoption "as the line defining the constitutional right to appointment of counsel," because "actual imprison-

ment is a penalty different in kind from fines or the mere threat of imprisonment . . . ." Although the precise issue in *Scott* was the scope of a criminal defendant's right to counsel in a misdemeanor case, we are persuaded that the rationale behind the "actual imprisonment" distinction applies equally to juvenile adjudications. Thus, we conclude that a juvenile is not deprived of his constitutional right to counsel in cases where the juvenile adjudication does not ultimately result in a deprivation of the juvenile's physical liberty by way of incarceration. *Id.* at 373-374; see also *Lassiter, supra* at 25-27.

In this case, the sentencing court commented on defendant's juvenile delinquency record in imposing defendant's sentence. Defendant's presentence investigation report indicates that some of defendant's juvenile adjudications were obtained without the benefit of counsel. However, the record does not indicate that any of defendant's prior juvenile adjudications obtained without the benefit of counsel resulted in incarceration. Accordingly, because defendant's prior juvenile adjudications were not obtained in violation of his constitutional right to counsel, defendant is not entitled to a *Tucker* hearing. See *People v Justice*, 216 Mich App 633, 645; 550 NW2d 562 (1996); *People v Richert (After Remand)*, 216 Mich App 186, 195; 548 NW2d 924 (1996).

Affirmed.