*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW PRESTON BURGER,

        Defendant-Appellant.

UNPUBLISHED
January 18, 2024

No. 365782
St. Joseph Circuit Court
LC No. 22-024212-FC

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant, Matthew Preston Burger, appeals by leave granted[1] his sentence for assault by strangulation in violation of MCL 750.84(1)(b). Defendant pleaded guilty to assault by strangulation and was sentenced to 57 months to 10 years imprisonment. Defendant argues the trial court sentenced him pursuant to an inaccurate guidelines range. We reverse and remand for resentencing.

## I. FACTS

In December 2022, defendant discovered that his fiancée, Ashley Parsons, was having an affair. Defendant and Parsons initially decided to stay together. However, in early February, defendant learned that Parsons was continuing the affair. While driving Parsons and her two children back to their home, defendant and Parsons began to argue. When they arrived at the home, the two children went inside while defendant and Parsons stayed in the car. During the course of the argument defendant hit Parsons with his elbow, causing her head to hit the inside of the car. Defendant then put his hand over Parsons' face, covering her mouth and nose. Defendant proceeded to put both of his hands around Parsons' neck, attempting to choke her.

---

[1] *People v Matthew Preston Burger*, unpublished order of the Court of Appeals, entered May 18, 2023 (Docket No. 365782).

Defendant eventually let Parsons go and she went inside the house. Defendant followed and broke the back-door window of the home. Once inside, defendant threatened to kill their two dogs. Parsons pleaded with defendant to take her car and leave. Parsons took her children and fled next door to a gas station owned by Parsons' mother. There, Parsons called 911 and police arrived at the gas station. Defendant was arrested later that night.

At sentencing on the assault by strangulation conviction, the trial court assessed 10 points for offense variable (OV) 9, finding that defendant put two to nine people in danger of physical injury or death. Defense counsel objected and argued that OV 9 should be assessed 0 points because the two children were not present for the assault, therefore they were not placed in danger of physical injury or death. The trial court found that "the children were placed in danger after, immediately after the assault. He went inside where the children were, still acting out, still threatening the animals and the people there so I'll score it at 10 points." The trial court calculated defendant's sentencing guidelines range to be 29 to 57 months imprisonment. The trial court sentenced defendant to 57 months to 10 years imprisonment (the statutory maximum).

Through appellate counsel defendant timely moved to correct an invalid sentence. Defendant argued that (1) the trial court erred in assessing 10 points for OV 9 because only Parsons was placed in danger of physical injury, and (2) for the first time, defendant argued that the trial court erred in assessing 10 points for prior record variable (PRV) 5 because defendant's juvenile adjudication should not be considered when it is unclear whether he had the assistance of counsel at the plea proceeding. The trial court heard oral argument and denied defendant's motion. Defendant now appeals.

## II. DISCUSSION

Defendant raises two issues on appeal. First, defendant argues that the trial court erred when it relied on his post-offense conduct in finding that two to nine victims were placed in danger of injury or loss of life for purposes of assessing 10 points under OV 9. Second, defendant asserts the trial court erred in using defendant's misdemeanor juvenile adjudication in assessing points for PRV 5 because it is unclear whether he had the assistance of counsel. We address each argument in turn.

## A. STANDARD OF REVIEW

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v Teike*, __ Mich App __, __; __ NW2d __ (2023) (Docket No. 363705); slip op at 1, quoting *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made. *Id*. at __; slip op at 1. "We review de novo issues of statutory construction." *Id*. at __; slip op at 1, quoting *People v Gerhard*, 337 Mich App 680, 685; 976 NW2d 907 (2021).

## B. OV 9

Defendant argues the trial court erroneously assessed 10 points for OV 9, finding that the children and pets were placed in danger of injury or loss of life. Defendant argues the children were not present for the assault, and pets are not persons for purposes of scoring OV 9. This resulted in an increased, inaccurate guidelines range and defendant argues he is entitled to resentencing. We agree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citation omitted). The "[o]ffense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "The 'sentencing offense' for purposes of scoring OVs is 'the crime of which the defendant has been convicted and for which he or she is being sentenced.'" *Id*. at 122 n 3.

Offense variables are generally offense-specific. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). OV 9 assesses points based on the number of victims. MCL 777.39(1). The statute provides that in assessing points, "count each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a). Our Supreme Court has found that this language indicates that OV 9 is an offense-specific variable in which only people placed in danger of injury or loss of life when the sentencing offense was committed should be considered. *Sargent*, 481 Mich at 350. Also known as *McGraw* variables, offense-specific variables limit the consideration to conduct occurring during the sentencing offense. See *McGraw*, 484 Mich at 126. This is in contrast to offense variables such as OV 12 (contemporaneous felonious acts), where the statute provides that OV 12 applies to acts that occurred within 24 hours of the sentencing offense and have not resulted in separate convictions. See *id*. at 126-127; MCL 777.42(2)(a). Absent a specific mandate to consider factors or conduct beyond the sentencing offense itself, or in other words "the entire criminal transaction," the court may only consider conduct that occurred during the crime of which defendant was convicted. *McGraw*, 484 Mich at 129. A sentencing court may not consider post-offense conduct, *id.* at 133-134, nor pre-offense conduct to assess points under OV 9, *People v Thompson*, 314 Mich App 703, 711-712; 887 NW2d 650 (2016) (holding the trial court erred in considering "conduct engaged in by defendant throughout the two-year course of the sexual abuse, instead of confining its examination to conduct occurring during the sexual assault on [the offense date], which was the only criminal offense to which defendant pleaded no contest."). See also *People v Baskerville*, 333 Mich App 276, 294-295; 963 NW2d 620 (2020) (finding a child in another room during a murder was not "in danger of physical harm" and was thus not a victim under OV 9).

This is not to say that the entire criminal transaction may never influence a defendant's sentence. *McGraw*, 484 Mich at 129. The sentencing court may consider the entire criminal transaction when deciding the ultimate sentence to impose and whether to depart from the guidelines recommendation. *Id*. But when assessing points for offense-specific variables the court must limit its consideration to the specific sentencing offense to ensure an accurate guidelines range. See *id*. at 129-130.

Furthermore, "a sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). "A defendant is entitled to be sentenced in accord with the law, and is entitled to be sentenced by a judge who is acting in conformity with such law."

*People v Francisco*, 474 Mich 82, 90-91; 711 NW2d 44 (2006). When there is a scoring error and the error altered the appropriate sentencing guidelines range, it would be "fundamentally unfair to deny a defendant … the opportunity to be resentenced on the basis of accurate information." *Id.* at 90.

Here, the trial court assessed 10 points for OV 9, finding that "there were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). The sentencing offenses at issue are defendant's convictions for assault by strangulation and domestic violence. See *Teike*, __ Mich App at __; slip op at 2. The trial court relied on the following undisputed facts to find defendant guilty of assault by strangulation:

> *The Court*: And the allegation is that you put your hands over her mouth and nose preventing her from breathing. Did that happen?
>
> *The Defendant*: Yes, sir.
>
> *The Court*: All right. And it wasn't an accident, is that correct?
>
> *The Defendant*: That's correct.

And the trial court relied on the following undisputed facts to find defendant guilty of domestic violence:

> *The Court*: … [S]o it first says that you may have struck her in the head with your elbow and then, cause [sic] she had a bloody lip.
>
> *The Defendant*: Okay.
>
> *The Court*: So was that one movement but you struck her and then you put your hands over her face?
>
> *The Defendant*: Yes, sir. I didn't continue to hit her or I mean I don't downplay what I did at all. I admit my fault but it was just all in one action, yes.

At sentencing, the prosecutor argued that OV 9 should be assessed 10 points because the children were placed in danger of physical injury. Defense counsel argued that because the children were not present for the assault, they were not placed in danger of physical injury. The trial court observed that OV 9 is a *McGraw* variable in which only conduct relating to the sentencing offense can be considered. However, the trial court relied on a case in which this Court found that armed robbery, for the purposes of OV 9, includes the robber's conduct in fleeing the scene. The trial court concluded it could consider defendant's post-offense conduct, and thus assessed 10 points for OV 9, finding that Parsons' two children and their dogs were placed in danger of physical injury "immediately after the assault."

The trial court clearly erred in considering defendant's post-offense conduct when it found that two to nine victims were placed in danger immediately after the assault. The trial court was correct in its determination that OV 9 is a *McGraw* variable in which only conduct that occurred during the sentencing offense could be considered in assessing the number of victims. However,

the trial court erred in finding that defendant's conduct immediately following the assault was a continuation of the assault. While the trial court did not cite the name of the robbery case it relied on in considering post-offense conduct for OV 9, defense counsel stated during the hearing on the motion to correct an invalid sentence that he believed that case was *People v Mann*, 287 Mich App 283; 786 NW2d 876 (2010). Defense counsel correctly pointed out that considering post-offense conduct was appropriate in *Mann* because the definition of robbery includes conduct occurring during flight. (MCL 750.530 provides that "'in the course of committing a larceny' includes acts that occur… in flight or attempted flight after the commission of the larceny…"). Defense counsel argued that the ruling in *Mann* should be limited to the crime of robbery or "at least to statutes that include the conduct during flight, which assault does not." The trial court did not confirm that *Mann* was the authority upon which it relied in considering defendant's post-assault conduct, but *Mann* articulates the same rule about flight being included in the crime of robbery that the trial court was analogizing to. See *Mann*, 287 Mich App at 287.

The Court in *Mann* found that "the course of an armed robbery includes the robber's conduct in fleeing the scene of the crime. Thus, in the instant case, defendant's commandeering of a car immediately after taking money from the first victim and forcing the driver of the car to drive him to another community, created a second victim of the armed robbery." *Id.* The Court came to this conclusion because the statutory definition of robbery includes "acts that occur… in flight or attempted flight." The statutory definition of assault by strangulation, MCL 750.84, contains no such language. Further, the statute for OV 9, MCL 777.39, does not contain language permitting the trial court to look outside the sentencing offense. *McGraw*, 484 Mich at 133. Therefore, the trial court must confine its review of OV 9 to conduct occurring during the assault.

The trial court reasoned as follows:

> I do find the children were placed in danger after, immediately after the assault. He went inside where the children were, still acting out, still threatening the animals and the people there so I'll score it at 10 points. OV-9 at 10 points.

However, a trial court must confine its review to the sentencing offense when assessing points under OV 9. See *McGraw*, 484 Mich at 122. If we confine our review to the sentencing offense, it is apparent that only one victim was placed in danger of physical injury during the assault. The two children were not present when the assault occurred; they were inside the home while defendant and Parsons sat in the car outside. Because the assault occurred while defendant and Parsons were alone, only one person was placed in danger of physical injury or death, Parsons. And to the extent the trial court based its assessment on any danger to the pet dogs, animals are not "persons" for the purposes of assessing OV 9 because the statute instructs to "count each *person* who was placed in danger." MCL 777.39(2)(a). See also *People v Kruithoff*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2003 (Docket No. 242739), p 3.

OV 9 should have been assessed 0 points, rather than 10 points. Assessing a score of 0 for OV 9 would reduce defendant's total offense variable score to 40, which means that his sentencing guidelines range would be 19 to 38 months' imprisonment (a class D felony scored in level IV), see MCL 777.64, rather than 29 to 57 months' imprisonment as calculated by the trial court. The trial court sentenced defendant to 57 months' to 10 years' imprisonment (the statutory maximum), which exceeds the properly calculated guidelines range. Because defendant was sentenced

according to an inaccurate guidelines range, he is entitled to resentencing under the correct guidelines range. See *Francisco*, 474 Mich at 90-91.

## C. PRV 5

Defendant also argues that the trial court erred in relying on defendant's misdemeanor juvenile adjudication in assessing points for PRV 5. Defendant asserts that the record is unclear whether defendant had the assistance of counsel or had waived the assistance of counsel in that proceeding. In these situations where there is a probable *Gideon*[2] violation, defendant argues fundamental fairness should bar the use of juvenile adjudications regardless of whether it resulted in incarceration. We disagree.

PRV 5 assesses points based on a defendant's prior adult misdemeanor convictions or prior misdemeanor juvenile adjudications. MCL 777.55. Here, the trial court assessed 5 points for PRV 5, finding that defendant had two prior misdemeanor convictions: one as an adult and one as a juvenile. However, defendant argued his prior juvenile adjudication should be struck from the court's consideration because the arraignment and plea occurred on the same day, so defendant was most likely not represented by counsel, in violation of *Gideon*, 372 US 335 and *In re Gault*, 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967) (right to counsel applies in juvenile delinquency proceedings).

A juvenile adjudication obtained in violation of a person's constitutional right to counsel may not be used against that person to enhance his punishment for a subsequent offense. *People v Moore*, 391 Mich 426, 438; 216 NW2d 770 (1974). See also *People v Carpentier*, 446 Mich 19; 521 NW2d 195 (1994). A defendant who challenges a prior conviction for lack of counsel or a proper waiver of counsel under *Gideon* bears the initial burden of proof. *People v Haywood*, 209 Mich App 217, 231; 530 NW2d 497 (1995); *Carpentier*, 446 Mich at 31. A defendant must present prima facie proof that a juvenile adjudication was obtained in violation of his constitutional right to counsel, or present evidence that the sentencing court either failed to reply to a request for or refused to furnish the requested copies of records. *People v Daoust*, 228 Mich App 1, 18; 577 NW2d 179 (1998), overruled in part on other grounds by *People v Miller*, 482 Mich 540, 561 (2008); *Carpentier*, 446 Mich at 32-33. The burden then shifts to the prosecutor to establish the constitutional validity of the prior conviction. *Haywood*, 209 Mich App at 231. In *Daoust*, this Court held that because the right to counsel is triggered by a defendant's interest in his physical liberty, a juvenile is not deprived of his right to counsel in cases when the adjudication does not result in a deprivation of the juvenile's physical liberty "by way of incarceration." *Daoust*, 228 Mich App at 18-19.

Here, it is unclear whether defendant was represented by counsel or had waived his right to counsel during the juvenile proceedings. The case history docket sheet from the juvenile court lists a prosecutor's name but no defense attorney. The juvenile court indicated to the parties that they no longer have the case file. During the hearing on defendant's motion to correct an invalid sentence, defense counsel indicated that he and the prosecutor agreed that a *Gideon* violation

---

[2] *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963).

probably occurred because the plea and arraignment happened on the same day. However, no record was ever provided to the trial court confirming as much. The presentence investigation report states it is "unknown" whether defendant had an attorney present for his juvenile adjudication.

Defendant's juvenile adjudication did not result in incarceration. Defendant was sentenced to serve a six-month term of probation. Therefore, under *Daoust*, the trial court did not clearly err in concluding that because defendant's prior juvenile adjudication did not result in incarceration, the adjudication could be used to enhance his current sentence. *Daoust*, 228 Mich App at 18-19.

Defendant argues that *Daoust* conflicts with this Court's earlier decision in *People v Ristich*, 169 Mich App 754, 758; 426 NW2d 801 (1988), in which this Court held that "a constitutionally infirm juvenile delinquency adjudication obtained in violation of the juvenile's right to counsel cannot be used to enhance a criminal sentence." *Daoust* is this Court's most recent precedent on this issue, and that portion of the decision was not overturned.[3] Thus, this Court is bound to follow *Daoust*, as it is a published decision of this Court. MCR 7.215(J)(1). Moreover, *Daoust* does not necessarily conflict with *Ristich*. In *Daoust*, this Court explained that "[t]he constitutional right to the assistance of counsel is triggered by a defendant's interest in his physical liberty." *Daoust*, 228 Mich App at 18. Because the right to counsel is triggered by a defendant's interest in his physical liberty, a juvenile is not deprived of his right to counsel in cases when the adjudication does not result in a deprivation of the juvenile's physical liberty "by way of incarceration." *Daoust*, 228 Mich App at 18-19. Here, defendant's juvenile adjudication did not result in incarceration and therefore was not obtained in violation of his right to counsel; the trial court properly considered the adjudication when assessing defendant's prior record score.

## III. CONCLUSION

The trial court erred in assessing 10 points for OV 9 because it considered defendant's post-offense conduct. The trial court did not err in assessing 5 points for PRV 5 because defendant's prior juvenile adjudication was properly considered. We reverse and remand for resentencing. On remand, the trial court shall assess 0 points for OV 9 and resentence defendant according to the accurate guidelines range of 19 to 38 months' imprisonment. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

[3] As noted, *Daoust* was overruled in part on other grounds by *Miller*, 482 Mich at 561.