# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL DWAYNE SCOTT,

        Defendant-Appellant.

UNPUBLISHED
November 15, 2018

No. 340750
Dickinson Circuit Court
LC No. 17-005379-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL DWAYNE SCOTT,

        Defendant-Appellant.

No. 340761
Dickinson Circuit Court
LC No. 17-005380-FC

---

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals as of right his jury trial convictions of two counts of delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), for which he was sentenced, as a fourth-habitual offender, MCL 769.12, to concurrent terms of 6 to 25 years' imprisonment for each conviction. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant met Anthony Pietrantonio in rehab for drug abuse and addiction in late 2016. Eventually, in early 2017, both exited rehab and returned to Dickinson County. Shortly after

---

[1] *People v Scott*, unpublished order of the Court of Appeals, entered November 3, 2017 (Docket Nos. 340750 & 340761).

-1-

leaving rehab, Pietrantonio overdosed on heroin. When he awoke in the hospital, he was greeted by police officers, who Pietrantonio informed that he wanted to assist in removing drugs from the community. Pietrantonio testified that he also feared prosecution for heroin possession, which was an additional reason he agreed to assist the police as part of a drug enforcement team in Dickinson County called "KIND," made up of officers from **K**ingsford, **I**ron Mountain, **N**orway, and **D**ickinson County.

Subsequently, Pietrantonio reached out to defendant to set up a meeting where Pietrantonio would be able to purchase heroin. On two separate occasions in March of 2017, defendant and Pietrantonio met, and Pietrantonio exchanged $150 in marked bills for heroin from defendant. Pietrantonio was searched by officers before each controlled buy and found not to have any money or drugs on him. When he left the meeting with defendant he gave the purchased heroin to police, which was later tested to verify that it actually was heroin, and was then searched again. The second search always was performed by the same officer that performed the first and Pietrantonio was found not to possess any drugs or money on both occasions. Four days later, police pulled defendant over while driving and arrested and charged him with two counts of delivery of less than 50 grams of heroin. At trial, defendant produced evidence accusing Pietrantonio of framing defendant. Defendant contended that Pietrantonio hid the heroin on himself before the meetings, and only removed it afterward to give to police. Defendant testified that he only met with Pietrantonio because Pietrantonio owed him money.

The jury convicted defendant of both counts. This appeal followed.

## II. JURY SELECTION

Defendant argues that the trial court erred when it failed to excuse certain jurors for cause. We disagree.

## A. PRESERVATION

In this case, "the defendant must exhaust his peremptory challenges to preserve a jury selection question." *People v Jendrzejewski*, 455 Mich 495, 514 n 19; 566 NW2d 530 (1997). The record reveals that defendant never moved the trial court to strike any of the challenged jurors for cause nor did he use all of his peremptory challenges. Thus, this issue is not preserved for our review. *Id*.

## B. STANDARD OF REVIEW & APPLICABLE LAW

Generally, "[w]e review for abuse of discretion a trial court's rulings on challenges for cause based on bias." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). However, this Court must review the "unpreserved claim for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. As such, "[r]eversal is only warranted if defendant was actually innocent and the plain error caused defendant to be

convicted or 'if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings," ' regardless of defendant's innocence." *Roscoe*, 303 Mich App at 648, quoting *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004), quoting *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). "[T]he proper interpretation and application of court rules" is reviewed de novo. *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018).

" 'The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial "indifferent" jurors.' " *Jendrzejewski*, 455 Mich at 501, quoting *Irvin v Dowd*, 366 US 717, 722; 81 S Ct 1639; 6 L Ed 2d 751 (1961). Stated differently, "[a] defendant who chooses a jury trial has an absolute right to a fair and impartial jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994), citing *Duncan v Louisiana*, 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968). "It is imperative, in securing the rights of the parties to an impartial jury, for the court to allow the elicitation of enough information so that the court itself can make an independent determination of a juror's ability to be impartial." *Tyburski*, 445 Mich at 620. "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). "A prospective juror is subject to challenge for cause on any ground set forth in MCR 2.511(D) or for any other reason recognized by law." MCR 6.412(D)(1). "If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MCR 6.412(D)(2).

While a trial court generally has discretion in excusing a proposed juror for cause, "once a party shows that a prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror, who must be excused for cause." *People v Eccles*, 260 Mich App 379, 382-383; 677 NW2d 76 (2004). In order to warrant relief, a defendant must show that " '(1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable.' " *People v Legrone*, 205 Mich App 77, 81; 517 NW2d 270 (1994), quoting *Poet v Traverse City Osteopathic Hosp*, 433 Mich 228, 241; 445 NW2d 115 (1989).

C. ANALYSIS

Pursuant to the dictates of *Legrone*, 205 Mich App at 81 (quotation marks omitted), defendant is not entitled to relief as he failed to use all of his peremptory challenges and did not "demonstrate[] the desire to excuse another subsequently summoned juror . . . ." However, because defendant also asserts on appeal that defense counsel was ineffective for failing to move to strike the relevant jurors for cause or use all of the peremptory challenges, which will be addressed later in this opinion, *infra*, we nonetheless analyze whether the challenged jurors actually were objectionable.

Defendant first challenges Jurors Massi and Sauld, arguing they were excusable for cause pursuant to MCR 2.511(D)(8). That court rule provides that there is cause to excuse a juror where the person "is related within the ninth degree (civil law) of consanguinity or affinity to one

of the parties or attorneys." MCR 2.511(D)(8). This rule plainly is not applicable to Juror Massi because she worked for the wife of a district court judge. There was no evidence she was related to anyone involved in the case. *Id*.

Juror Sauld, meanwhile, was related to the trial court judge. The trial court revealed the relationship during juror selection, while clarifying that they had not discussed the case. Defendant insists that the trial court judge should be included in the definition of "one of the parties or attorneys," pursuant to MCR 2.511(D)(8).

When considering court rules, we must begin our "analysis with the plain language of the relevant [] rule[]." *People v Comer*, 500 Mich 278, 293; 901 NW2d 553 (2017). The "individual words and phrases" must be addressed "in their context within the Michigan Court Rules." *Traver*, 502 Mich at 31. "The goal of court-rule interpretation is to give effect to the intent of the Supreme Court, the author of the rules." *People v Swain*, 288 Mich App 609, 629; 794 NW2d 92 (2010). This Court previously noted that the grounds listed in MCR 2.511(D) can be grouped into two categories: (1) " 'the person is not statutorily qualified to act as a juror,' " and (2) ' "the juror is biased, *i.e.*, [] the juror has preconceived opinions or prejudices, or such other interest or limitations as would impair his or her capacity to render a fair and impartial verdict.' " *Eccles*, 260 Mich App at 382, quoting 3 Dean & Longhofer, Michigan Court Rules Practice, § 2511.5, p 172-173. For those grounds falling in the second category, like subsection (D)(8), proof that the court rule applies " 'is equivalent to bias or prejudice at common law.' " *Eccles*, 260 Mich App at 383, quoting *People v Lamar*, 153 Mich App 127, 134-135; 395 NW2d 262 (1986).

Therefore, it is logical that subsection (D)(8) applies to the "parties and attorneys" that actually have an interest in the case. MCR 2.511(D)(8). The relevant inquiry is whether the juror in question would be able to be impartial in order to ensure that the defendant receives a fair trial. *Tyburski*, 445 Mich at 618. Consequently, it is reasonable to assume that having a relationship with a party or attorney that is on one adversarial side of a case might color a juror's view of the evidence toward that party or attorney's argument. See *id*. That same concern cannot be said to apply to the relative of a trial court judge, because the trial court is required to operate under "the veil of impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). There is no argument in the present case that the trial court judge appeared to favor the prosecution to the detriment of defendant, and indeed, on several occasions, defense counsel commented regarding the trial judge's efforts to ensure a fair trial. Because the trial court judge is not an adversarial party or attorney, MCR 2.511(D)(8) simply is not implicated by a juror's relationship therewith.[2] Defendant's argument to the contrary is without merit. Further, during voir dire, Juror Sauld stated that she would be able to render a fair and impartial verdict and her ability to do so was not impaired by her cousin being the presiding judge and defendant has not provided any evidence to the contrary. Considering that jurors are presumed to be impartial and

---

[2] While not binding, but yet informative, the Arkansas Supreme Court considered a similar factual scenario and held that a juror's relationship to the trial judge alone was not enough to prove bias. *Anderson v State*, 2010 Ark 404; 373 SW3d 876 (2010).

the burden was on defendant to prove otherwise, this argument is without merit. *Johnson*, 245 Mich App at 256.

Defendant also argues that Juror Massi, who worked for a district court judge's wife, was excusable pursuant to MCR 2.511(D)(9). Defendant alleges that Juror Massi should be considered "the . . . employee . . . of a party or attorney." *Id*. As discussed, a judge operating under "the veil of impartiality," *Stevens*, 498 Mich at 170, does not fall under the category of "a party or attorney" with respect to MCR 2.511(D), because a relationship to a judge provides no reason to presume that person would be biased. Additionally, with respect to Juror Massi, she did not work for a judge, but for a judge's wife, so MCR 2.511(D)(9) clearly does not apply. Further, during voir dire, Juror Massi repeatedly stated that she would have no problem being a fair and impartial juror and that her employment relationship with the district court judge's wife would not affect that ability. Defendant presents no evidence to the contrary and so is unable to overcome the presumption that Juror Massi was impartial. *Johnson*, 245 Mich App at 256.

Defendant next challenges Juror Backlund. Juror Backlund knew another member of the jury and was an acquaintance of a police officer that was on the witness list but who ultimately was not called, Officer Rochon. When asked to specify his relationship with Officer Rochon, Juror Backlund stated that their children played soccer together at some point, but that they had not spoken to one another in several years. Juror Backlund was asked by defense counsel, "[a]nything that would—in your past that would make you preconceived to look and say, 'Well, if it's law enforcement saying it, then it must be true[?]' " Juror Backlund responded, "no." Juror Backlund also stated that he would be able to operate as a fair and impartial juror. Defendant now contends that Juror Backlund was excusable for cause but does not provide under which subsection of MCR 2.511(D) would apply, saying only that he was biased. However, Juror Backlund's statements during voir dire clearly express that he would be fair and impartial, and his acquaintance with a police officer and fellow juror would not affect that ability. Defendant has not provided any evidence or reasoning that would suggest that knowing someone else on the jury somehow would render those jurors biased against him. Considering that jurors are presumed to be impartial and the burden was on defendant to prove otherwise, and defendant has not provided any evidence that Juror Backlund was biased in any manner, this argument is without merit. *Johnson*, 245 Mich App at 256.

Lastly, defendant challenges Juror Jayne. During voir dire, she said that she knew Officer Joseph Dumais, who was significantly involved in the second controlled buy and was a witness at trial, and that they went four-wheeling together a few times per year. Juror Jayne also went to high school with Officer Garth Budek, who also was involved in the second controlled buy and was a witness at trial, but stated that they had not been friends since then. Juror Jayne's father-in-law, Bobbie Jayne, had a history in law enforcement and was close friends with Officer Joseph Menghini, who was a coordinator of KIND and a witness at trial. Juror Jayne also was related to another juror, but said that would not affect her ability to act impartially. Like with Juror Backlund, defendant is unable to identify any subsection of MCR 2.511(D) that would apply to Juror Jayne knowing police officers or a fellow juror in a small town. During voir dire, Juror Jayne repeatedly stated that she had not discussed the case with anyone in law enforcement, she would be able to impartially listen to the testimony of the officers she knew, and that she would value an officer's testimony in the same manner as any other witness. In light of her testimony that her relationship with police officers would not affect how she reviews

the testimony, defendant has again failed to meet the burden of overcoming the presumption that Juror Jayne was capable of being and actually was impartial. *Johnson*, 245 Mich App at 256.

Separately, defendant also challenges Juror Jayne's ability to be an impartial juror based on her distant family member's death due to drug overdose in Illinois. That relative's sister also was in rehab for drug addiction at the time of trial. Defendant directs this Court's attention to several times that Juror Jayne said that she would "try" to put aside her feelings about drugs and how they can affect the lives of people, including her second cousin. During voir dire, defense counsel pointed out that Juror Jayne kept using the term "try," and asked her a more direct question: "You say that, you know, 'I—I will try to set it aside.' If the judge instructs you whether—the—a jury instruction. You guys are all to swear to, you know, uphold the oath of the office as a jury. Not only will you try, will you do so?" Juror Jayne responded, "I will do that." As this Court previously has held, "under the facts of this case, the juror's promise to keep the matters of her personal life separate from defendant's case was sufficient to protect defendant's right to a fair trial." *Johnson*, 245 Mich App at 256. Defendant has failed to overcome the presumption that Juror Jayne was a fair and impartial juror. *Id.*

In sum, defendant failed to provide any evidence that any of the jurors challenged were excusable for cause. Thus, there being no plain error, defendant's arguments do not warrant relief. *Carines*, 460 Mich at 763.[3]

## III. SUPPRESSION OF STATEMENT TO POLICE

Defendant argues that his statement to police after his arrest should have been suppressed. We disagree.

## A. STANDARD OF REVIEW & APPLICABLE LAW

"This court 'review[s] a trial court's factual findings in a ruling on a motion to suppress for clear error. ' " *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014), quoting *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001). A trial court's factual determinations are "clearly erroneous only if we are left with a definite and firm conviction that the trial court made a mistake." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017).

"The Fifth Amendment of the United States Constitution provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.' " *Tanner*, 496 Mich at 206-207, quoting US Const, Am V. The Michigan Constitution contains an identical provision. Const 1963, art 1, § 17. "The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment." *People v Clary*, 494 Mich 260, 265;

---

[3] Defendant also contends that this Court should apply the test announced in *People v Daoust*, 228 Mich App 1, 9; 577 NW2d 179 (1998), overruled *People v Miller*, 482 Mich 540; 759 NW2d 850 (2008). Defendant is incorrect because *Daoust*, by its own language, was not applicable, and because the section of *Daoust* relied upon by defendant was overruled. See *Miller*, 482 Mich at 561.

833 NW2d 308 (2013), citing *Malloy v Hogan*, 378 US 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964). "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) (quotation marks omitted), citing *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "In *Miranda*, the United States Supreme Court held that the Fifth Amendment's prohibition against compelled self-incrimination requires that the accused be given a series of warnings before being subjected to 'custodial interrogation.' " *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 US at 444. "After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Id*. at 479. "But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id*.

## B. ANALYSIS

Defendant contends on appeal that the record is "unambiguous" that he was not read his *Miranda* warnings before being subjected to custodial interrogation. The prosecution does not challenge defendant's assertion that he was in custody, and thus, that the reading of *Miranda* warnings was constitutionally required. Rather, the prosecution asserts that the police officers in question actually did read defendant his *Miranda* warnings. The audio recording of the interrogation does not contain a reading of rights by the officers present. The record reveals that, during the *Walker*[4] hearing on this issue, defendant testified that he was not read any warnings before being subjected to custodial interrogation by Officer Menghini and Officer Derek Dixon. Meanwhile, Officer Menghini testified that he did read defendant the *Miranda* warnings, and Officer Dixon testified that he was on his cellular telephone at the time Officer Menghini read those rights, so it was not on the recording. Officer Menghini agreed that Officer Dixon was on the telephone at the time. The trial court heard and considered the testimony and found the officers' testimony to be more credible, considering that defendant had just undergone a traumatic event—his arrest.

Defendant, on appeal, essentially asks us to revisit that question and decide that the trial court clearly erred in believing the officers instead of defendant. We decline to do so. "Deference is given to a trial court's assessment of the weight of the evidence and the credibility of the witnesses." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). Here, the trial court heard the testimony of the relevant witnesses, was able to weigh the credibility of the witnesses based on observing that testimony, and determined that Officer Menghini in fact read

---

[4] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

-7-

defendant his *Miranda* warnings.[5]  Given the trial court's "superior opportunity" to hear the testimony and observe the witnesses, we must defer to that finding by the trial court.  See *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000).  Consequently, we are not "left with a definite and firm conviction that the trial court made a mistake."  *Dickinson*, 321 Mich App at 21.  Thus, the trial court did not clearly err.  *Id*.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was provided constitutionally defective representation requiring reversal and a new trial.  We disagree.

### A.  STANDARD OF REVIEW & APPLICABLE LAW

"Appellate review of an unpreserved argument of ineffective assistance of counsel, like this one, is limited to mistakes apparent on the record."  *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016).  "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo."  *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions."  *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20.  "However, effective assistance of counsel is presumed, and the

---

[5] The trial court also concluded that defendant voluntarily waived those rights before being interrogated, although defendant does not challenge that issue on appeal.  In defendant's *in propria persona* reply brief, however, he does challenge that determination by the trial court, suggesting that if he was too traumatized to remember being read his rights, as the trial court found, then he also must have been too traumatized to voluntarily waive those rights.  Defendant's reply brief, however, "must be confined to rebuttal of the arguments in the appellee's . . . brief . . . ."  MCR 7.212(G).  Thus, we need not consider this issue raised for the first time in a reply brief.  *Id*.; *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443-444; 906 NW2d 482 (2017) (quotation marks omitted) ("Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief.").  Even considering the merits, the trial court did not clearly err in determining, based on defendant's own testimony and the testimony of the officers, that defendant had a college education, was not physically threatened or harmed, was familiar with *Miranda* warnings generally, knew what rights he was entitled to pursuant to *Miranda*, and had previous experience with law enforcement.  Thus, the trial court did not err in determining that even though defendant may have been emotionally traumatized by his arrest, his waiver of rights still was voluntary.  See *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000) (quotation marks omitted) (holding that the issue of "whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion," and that "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" by the police).

defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second guess matters of trial strategy. *Thomas*, 260 Mich App at 457; *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

## B. ANALYSIS

Defendant first argues that trial counsel was ineffective for failing to move to strike jurors for cause or to use his peremptory challenges. For the reasons stated in this opinion, *supra*, any motion to excuse jurors for cause would have been meritless. Thus, such a motion would have been futile, so defense counsel cannot be said to be ineffective for failing to do so. *Thomas*, 260 Mich App at 457. Further, because there was no evidence that the jurors were biased in any manner, defense counsel's decision not to use peremptory challenges cannot be said to fall " 'outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. This is especially true because "the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and a manner of answering questions," which we did not witness. *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). Thus, "[w]e will not substitute our judgment for that of defendant's counsel, nor will we use the benefit of hindsight to assess counsel's performance." *Id*. This argument, therefore, lacks merit.

Defendant's reply brief filed *in propria persona* also argues that defense counsel was ineffective for failing to obtain Pietrantonio's cellular telephone records. The reply brief, however, alleges that the telephone records would have shown that Pietrantonio never set up a

drug deal with defendant, but instead that the meeting was to pay back a loan.[6] Defendant's argument lacks merit because he has failed to present any evidence that those text messages actually exist, if they would be beneficial to his case, or explain why, as a participant in the text messages himself, he did not produce them. Thus, he did not bear the "burden of establishing the factual predicate for his claim." *Cooper*, 309 Mich App at 80 (quotation marks omitted).

## V.  SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence produced to sustain his convictions for delivery of less than 50 grams of heroin. We disagree.

## A.  STANDARD OF REVIEW & APPLICABLE LAW

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735. "The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Henderson*, 306 Mich App at 9. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

"The elements of delivery of less than 50 grams of heroin are (1) a defendant's delivery (2) of less than 50 grams (3) of heroin or a mixture containing heroin (4) with knowledge that he or she was delivering heroin." *Dickinson*, 321 Mich App at 12. As used in the statute, " '[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to

---

[6] As discussed, *supra*, defendant's reply brief "must be confined to rebuttal of the arguments in the appellee's . . . brief . . . ." MCR 7.212(G). Thus, we need not consider this issue raised for the first time in a reply brief. *Id*.; *Lawrence*, 320 Mich App at 443-444.

-10-

another of a controlled substance, whether or not there is an agency relationship." *Id.*, quoting MCL 331.7105(1).

## B. ANALYSIS

At trial, Officer Dixon and Officer Budek testified that Pietrantonio was thoroughly searched before the controlled buys on March 9, 2017, and March 26, 2017. During both searches, Pietrantonio was found not to have any heroin or money on him or in his clothes. Pietrantonio testified that he did not have drugs or money anywhere on his body. After being searched, Pietrantonio was driven to the location where he was to meet up with defendant. The officers driving him testified that he did not make any furtive or suspicious movements during the drives. When Pietrantonio was dropped off at each location, he remained in an officer's sight line until he was picked up by defendant and his girlfriend. Pietrantonio testified that while in the vehicle each time he gave defendant $150 in exchange for two packets of heroin. Defendant's girlfriend testified that she saw Pietrantonio and defendant shake hands. After the exchange, defendant's girlfriend let Pietrantonio out of the vehicle, Pietrantonio returned to the police vehicles after defendant left the area, and Pietrantonio showed the police the purchased drugs. When they returned to the station, Pietrantonio turned over the drugs, which later were tested in the laboratory and determined to be less than 50 grams of heroin. Pietrantonio was searched again by the same officers and found not to have any drugs or money on him or in his clothes.

The first, second, and third elements of the charged crime required proof that defendant delivered less than 50 grams of heroin to someone. *Dickinson*, 321 Mich App at 12. Pietrantonio testified that defendant gave him two packets of heroin. The lab results revealed that the packets given to Pietrantonio actually contained less than 50 grams of heroin. Thus, Pietrantonio's direct testimony, in addition to the laboratory results, even in light of defendant's testimony to the contrary, satisfied the first three elements of defendant's convictions. *Id*. The lack of additional direct evidence such as officer eye-witness testimony and fingerprints on the drugs does not change that outcome, because circumstantial evidence alone "can constitute satisfactory proof of the elements of the crime." *Blevins*, 314 Mich App at 357. Defendant's argument regarding constructive possession, therefore, also is without merit considering there was direct evidence that defendant actually delivered the heroin to Pietrantonio. *Dickinson*, 321 Mich App at 12. The element in question in the charged crime is delivery, not possession. *Id*.[7]

The last element delivery of less than 50 grams of heroin requires proof that defendant had "knowledge that he [] was delivering heroin." *Id*. Pietrantonio testified that he made a plan to purchase heroin from defendant. When he left the vehicle defendant was in, Pietrantonio had

---

[7] Defendant argues in his *in propria persona* reply brief that the prosecution failed to present sufficient evidence to convict defendant because Pietrantonio could have had drugs taped to his body under his underwear before going to the meeting with defendant. The jury heard that testimony, but decided to believe Pietrantonio and the officers' testimony, and we resolve that conflict in the evidence "in favor of the prosecution." *Henderson*, 306 Mich App at 9. Defendant's argument, therefore, is without merit. *Id*.

heroin, which he testified was given to him by defendant. The laboratory confirmed that the substance actually was heroin. Further, circumstantial evidence allowed for a reasonable inference that defendant was in the business of delivering heroin, including the multiple cellular telephones, some razor blades, and a digital scale found in the car when defendant was arrested. Based on Officer Dixon's testimony that those items commonly were used in the drug trade, a reasonable juror could infer that defendant was aware he was delivering heroin. Further, Officer Dixon's testimony that defendant told Pietrantonio that "this is good shit," also allowed for an inference that defendant knew he was delivering heroin. It was up to the jury to determine the "inferences [that] may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. The jury made that decision by convicting defendant.

In sum, there was sufficient evidence to convict defendant of two counts of delivery of less than 50 grams of heroin pursuant to MCL 333.7401(2)(a)(*iv*).

## VI. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution committed misconduct requiring reversal by allowing Pietrantonio to present perjured testimony. We disagree.

### A. PRESERVATION & STANDARD OF REVIEW

In cases alleging prosecutorial misconduct, there must be a "contemporaneous objection or request for a curative instruction in regard to any alleged error" in order to preserve the issue for review before this Court. *Brown*, 279 Mich App at 134. Defendant failed to do so, thus, this issue is not preserved. *Id*. Generally, "a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *Id*. However, because the issue presented has not been preserved for review, this Court must review the "unpreserved claim for plain error affecting defendant's substantial rights." *Roscoe*, 303 Mich App at 648.

### B. APPLICABLE LAW & ANALYSIS

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "If a conviction is obtained through the knowing use of perjured testimony, it 'must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Id*., quoting *United States v Agurs*, 427 US 97, 103; 96 S Ct 2392; 49 L Ed 2d 342 (1976). "It is inconsistent with due process when the prosecutor, although not having solicited false testimony from a state witness, allows it to stand uncorrected when it appears, even when the false testimony goes only to the credibility of the witness." *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986), citing *Giglio v United States*, 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972). However, "it is the 'misconduct's effect on the trial, not the blameworthiness of the prosecutor, [which] is the

crucial inquiry for due process purposes.' " *Aceval*, 282 Mich App at 390 (alteration in *Aceval*), quoting *Smith v Phillips*, 455 US 209, 220 n 10; 102 S Ct 940; 71 L Ed 2d 78 (1982).

Defendant acknowledges that, at trial, Pietrantonio testified truthfully that he was found with heroin after his overdose and feared prosecution. Defendant argues that the alleged perjury occurred during the preliminary examination, when Pietrantonio stated that he was not found with drugs and did not fear prosecution. Even assuming Pietrantonio's differing testimony could be considered perjury, and that the prosecution knew that Pietrantonio was lying and refused to correct the error, defendant's claim still must fail because he cannot prove that perjury that occurred during preliminary examination affected his due process rights *at trial*. See *Aceval*, 282 Mich App at 390. Ultimately, the jury did not hear the alleged perjury, so could not have been affected by it. See *Aceval*, 282 Mich App at 390. For the same reason, considering the present issue is unpreserved, defendant is unable to prove that any error affected his substantial rights. *Carines*, 460 Mich at 763. Thus, this issue is without merit. *Id*.

## VII. SUPPRESSION OF EVIDENCE BY PROSECUTION

Defendant argues that the prosecution committed a *Brady*[8] violation and infringed on his constitutional rights under the Confrontation Clause by failing to turn over evidence that Pietrantonio had been found with heroin after his overdose. We disagree.

### A. STANDARD OF REVIEW

Constitutional questions are generally reviewed de novo, including claims that a defendant was denied his right to present a defense, *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002), as well as due process claims, such as allegations of a *Brady* violation, *People v Stokes*, 312 Mich App 181, 189; 877 NW2d 752 (2015). Whether the admission of evidence "violate[d] a defendant's Sixth Amendment right of confrontation is a question of constitutional law that this Court reviews de novo." *People v Nunley*, 491 Mich 686, 696-697; 821 NW2d 642 (2012).

### B. APPLICABLE LAW & ANALYSIS

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To constitute a *Brady* violation, " '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " *Chenault*, 495 Mich at 149-150, quoting *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Stated differently, the elements of a *Brady* violation are as follows: "(1) the prosecution has

---

[8] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Chenault*, 495 Mich at 155.

Defendant argues that the prosecution suppressed evidence that would have established that Pietrantonio was caught with heroin and agreed to work with KIND in order to escape prosecution. First, defendant has failed to prove that the prosecution suppressed any evidence. In a pre-trial motion, defendant requested any notes from any police officers involved in the case, which he now suggests would show Pietrantonio's heroin possession and motivation for testifying. The prosecution stated that the notes had been requested from the officers, but that there were not any notes. Defendant has not provided any evidence, besides his conjecture, that those notes exist. Defendant acknowledged during the hearing on that motion that he had received all of the police reports involved in the case. Defendant also has not provided that any other evidence of Pietrantonio's heroin possession existed and was suppressed by the prosecution. Thus, defendant's claims regarding suppression of the officers' notes fails under the first prong of an alleged *Brady* violation. See *Chenault*, 495 Mich at 155.

Further, defendant also is unable to fulfill the third prong of a *Brady* violation because even assuming that the notes existed and were suppressed, they were not material. *Chenault*, 495 Mich at 155. "To establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Id*. at 150, quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985). As discussed, *supra*, and admitted by defendant, Pietrantonio testified at trial that he possessed heroin at the time of his overdose, that he was concerned about being prosecuted for said possession, and that his fear of prosecution motivated him to assist KIND. Therefore, any officers' notes regarding those facts, or any other evidence, would have been cumulative to Pietrantonio's own testimony to those same facts. Thus, the prosecution's alleged failure to turn over that evidence did not have a "reasonable probability" of changing the outcome of the trial when the jury already was aware of the facts that the evidence allegedly would have established. See *Chenault*, 495 Mich at 150.

Defendant also argues that the failure to turn over the alleged evidence violated his constitutional right to confront Pietrantonio. The United States Constitution and the Michigan Constitution both afford a criminal defendant the right "to be confronted with witnesses against him." *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011), quoting US Const, Am VI, and Const 1963, art 1, § 20. Generally speaking, the Confrontation Clause bars the admission of a witness's testimonial statements if the witness does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *Bennett*, 290 Mich App at 481. "The required elements of the Confrontation Clause are: (1) physical presence, (2) an oath, (3) cross-examination, and (4) 'observation of demeanor by the trier of fact . . . .'" *People v Buie*, 285 Mich App 401, 408; 775 NW2d 817 (2009), quoting *Maryland v Craig*, 497 US 836, 846; 110 S Ct 3157; 111 L Ed 2d 666 (1990).

Again, this claim by defendant is without merit. The record shows that Pietrantonio physically was present in court, took an oath, and was subject to cross-examination in the presence of the jury. During that cross-examination, Pietrantonio testified that he was found

with heroin, feared prosecution, and agreed to help KIND partially because of his fear of prosecution. It is unclear how officers' notes and alleged additional evidence regarding the issue Pietrantonio openly admitted to in front of the jury would have assisted defendant in cross-examining Pietrantonio. Thus, where Pietrantonio's testimony fulfilled the requirements of the Confrontation Clause, see *Buie*, 285 Mich App at 408, and defendant's ability to cross-examine was not infringed by an alleged lack of evidence, this argument by defendant is without merit. See *Fackelman*, 489 Mich at 524-525.

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle